CASE 14.—ACTION BY J. T. WAINSCOTT AGAINST C. H. CROUCH TO ESTABLISH THE BOUNDARY OF HIS LAND.—February 22.

## Crouch v. Wainscott

Appeal from Owen Circuit Court.

W. B. MOODY, Special Judge.

Judgment for plaintiff.   Defendant appeals.   Affirmed.

1. Land—Boundaries—Establishment—Precessioning—Notice—Ky. Stats., 1903, section 2372, requiring one desiring to have his land proccssioned to give notice to any person interested, means a written notice.
2. Same—Parol Notice—Sufficiency—Ky. Stats., 1903, section 2374, providing for the processioning of land, makes the processioners' report prima facie evidence as between parties interested, and provides for a written notice to any one interested by the land-owner having his lands processioned.  Held, That a parol notice to one interested was sufficient to render the

proceedings binding upon him where he was present pursuant to the notice and participated in the processioning.

3. Same—Evidence—Burden of Proof—Under Ky. Stats., 1903, section 2374, providing for the processioning of land and making the report of the processioners prima facie evidence as between parties interested, in ejectment, the report of processioners on a processioning of plaintiff's lands, of which defendant had proper notice, made a prima facie case as to the boundaries.

GARNET & CAROTHER for appellant.

CAMMACK & PERRY for appellee.

OPINION BY JUDGE O'REAR.—Affirming.

The issue in this action of ejectment was the true location of the boundary line between the tracts of land owned by appellant and appellee. Originally, and many years ago, both tracts were included in one boundary, but it was partitioned and deeds made accordingly to the parceners. Upon the trial the evidence was conflicting as to the true location of the disputed line. The jury found it to be as contended by appellee. Their finding was in accordance with a processioner's report, which had located and marked the line some time before. The admission of this report in evidence is relied on by appellant as a reversible error.

Whether the report was admissible, and what probative effect it had, are the only real questions presented for review. Processioning of land is a system common to but few of the American States. Tennessee, Georgia, North Carolina, and Kentucky have it; possibly others. Miller v. Heart, 26 N. C., 23; Watson v. Bishop, 89 Ga., 53. But, where the section and township system of location as modeled by the United States Government are in use, there is probably little

or no use for the office of processioners.   In those States like Kentucky, where the monuments of boundaries are marked trees, or stones, or other natural or artificial object, the original boundaries having been laid out in most instances in irregular shape, and comprising variable quantities of land, it is a matter of first importance, frequently, that these monuments should be preserved, or, if lost or destroyed, should be restored, or otherwise supplied.   Their existence and known location are the most essential evidence of the true location of the owners' lands and of their exact boundary.   Their preservation is deemed a matter of more than personal importance to those directly concerned, to-wit, the owners; for as large bodies of land originally granted by the State came in the course of time to be divided, and again divided into smaller ones, the original corners and lines of the tract originally granted became of common interest to all who own parcels of it.   In addition, the custom was, and yet is, to call in one patent or deed for a corner or line of an older patent or deed; thus by adoption making what was once evidence of but one boundary evidence also of another since erected.   This matter has been so recognized as a question of public concern that it is now, and since the organization of the Comomnwealth has been, a high misdemeanor or felony to destroy wantonly or fraudulently corner trees or monuments of boundaries.   Vide sections 1228, 1256, Ky. Stats., 1903.   If it was so important to preserve these original corners and marks—all necessarily subject to the mutations of time and accident—it was no less important to reestablish and re-mark such as may have become obliterated or destroyed.

In 1796 the first statute of this State was enacted providing processioners of land, and defining their duties. 1 Litt. Laws, p. 554, c. 275. It was in the main the same as the present statute on the subject. The material difference will be pointed out further along. The act of 1796 was extended in 1815 (5 Litt. Laws, p. 146, c. 180), and again in 1817 (5 Litt. Laws, p. 509, c. 498). The provisions of these statutes were subsequently brought forward in the revision of 1851 (Rev. Stats., c. 60), and in the revision of 1873 (Gen. Stats., c. 64). The preamble of the act of 1796 runs: "Whereas many inconveniences may arise to the citizens of this Commonwealth in case of the death of the only person or persons by whom their improvements, boundaries and the specialty of their entries can be established, and on which their titles to land depend; * * * and whereas it is represented to the present General Assembly, that the landmarks in this State, some of which are destroyed by fire and otherwise, particularly the corner trees, so that in a few years the bounds and corners cannot be ascertained: For remedy whereof, Be it enacted," etc. It is thus disclosed, as well as by the context of the act, that the purpose was to perpetuate two classes of evidence, deemed of general importance to the public as to particular persons, respecting the original location of boundary lines and the monuments thereof. One class of this evidence was the testimony of the living witness. The other was the true location of the original monuments and lines by substituting another monument or re-marking one for the one destroyed or effaced.

The present statute on the subject (sections 2367-2374, Ky. Stats., 1903) is a substantial re-enactment

of the original and amendatory acts just discussed.
By section 2367 it is provided that the county courts
of the Commonwealth shall appoint three discreet,
qualified persons precessioners for the county, two of
whom constitute a quorum, and who are compelled to
qualify by taking an oath of office. Section 2368 reads
as follows: "The processioners shall, on the applica-
tion of any person producing his title papers, go
around his land, or such part as he may desire, and
re-mark the same, taking care that the re-marks are
on the old lines; and when they find the corner trees,
posts or stones, or any of them, removed, defaced or
rotted down, the processioners shall mark new corner
trees, or place stones or posts, properly marked,
where the old corners stood. The processioners shall
report to the county court the land they have pro-
cessioned, the land of the persons it adjoins, and what
alteration of corner trees, posts or stones have been
made or added." Section 2370 provides that the
county surveyor, or some surveyor appointed by the
court, shall attend the processioners, and shall make
out a plat and certificate of the land of the applicant,
which shall be filed with the report. Section 2371
allows the processioners to take depositions of such
witnesses as may be produced by either party, to be
returned with their report. Section 2372 provides
that notice shall be given by any person desiring to
have his land processioned to any person interested.
Section 2373 regulates the proceeding where the land
lies in two or more counties; while section 2374 reads
as follows: "The reports of processioners, the plats
and certificates of the surveyor, notices and affidavits,
and depositions taken by the processioners,
shall, when returned to the County Court, be filed

away and carefully kept by the clerk, and the report, notice and plat be recorded, and shall be prima facie evidence against and between the parties interested and others claiming through or under them."

We have so far omitted section 2369, which is an addition in some of its features to the original statutes. The other sections, besides 2369, refer to proceedings where one party alone, not by an agreement with an adversary claimant, desires to have the lines of his boundary of land located or re-marked, and a record thereof made. Provision for notice to the adversary gives him an opportunity to be present, to have his lines also re-marked, and to perpetuate evidence by taking depositions. The effect of these procedings is not to adjudicate disputes, nor to adjudicate conflicting claims. It is only to perpetuate evidence. By section 2374 the effect is that as between those who had notice the processioner's report and plat shall be prima facie evidence of the facts to which they relate. Section 2369 deals with a different phase of the subject. That applies where two or more owners of adjoining lands agree and join in the request to have their division line marked. The proceedings under the last-named section must be not only joined in by all the parties concerned, but their assent must be indorsed in writing on the report and signed by the parties. Such report is made exclusive evidence of the facts it recites as between the parties and their privies, except in cases of fraud or mirepresentation.

The processioning in the case at bar was not under section 2369, but was under section 2368. It is objected that there was not written notice given by appellee to appellant of the time and place of the meeting of the

processioners.   We think written notice, where it is served otherwise than by publication, is the notice required by section 2372, Ky. Stats., 1903.   The same provision was in the old statutes.   Yet it was held that where a party in interest appeared without the requisite notice, and was present at the processioning, the office of the notice had been supplied, and he would be bound by his appearance as a waiver of notice. Miller v. Patrick, 7 T. B. Mon., 363; Johnson v. Norton, 3 B. Mon., 429.   In this case the evidence is that appellant was present pursuant to the parol notice, and participated in the processioning.   The result is that the report of the processioners, locating and marking the lines and corners of apepllee's lands, was receivable as evidence under the statute, as against appellant, to show the true original location of such lines and corners.   McLawrin v. Salmons, 11 B. Mon., 96; 52 Am. Dec., 563; Warmoth v. Tobin, 6 Ky. Law Rep., 586.   The action of the processioners was an official act, done under the sanction of an oath by public officers in the discharge of a statutory duty.

Such action, while it may not, and does not purport to, establish rights, may be made prima facie evidence of the existence of the facts so required to be and in fact reported to have been ascertained by such officers.

It is competent for the Legislature, and it is not an infrequent thing for it, to make official certification of a fact prima facie evidence of the fact, wherever it may be relevant to prove such fact in an action in court.   This does not, as seems to be assumed in argument, decide the fact to be so, but casts the burden of disproving it upon him who denies it.   The location of a particular line or corner to a boundary of land,

as such line or corner originally existed, does not necessarily establish the supremacy of the title. That question is left to be determined according to the rules of practice. The report of the processioners is evidence, prima facie, of the fact that the corners and lines therein established are at the same places fixed in an original document or proceeding. Whether the party then owns the land embraced by such lines is to be determined upon the whole case by the court or jury trying the fact. The superiority of such title is not affected, and is neither enhanced nor diminished by such report. Such was the practice in the instant case. The evidence was properly admitted.

Judgment affirmed.

Petition for rehearing for appellant overruled.