## Howard v. Clover Fork Coal Company.

(Decided March 6, 1925.)

### Appeal from Harlan Circuit Court.

Boundaries—Defendant Held Not to have Sustained Burden of Proving Incorrectness of Processioners' Report as to Beginning Point of his Land.—In suit to enjoin defendant from trespassing on plaintiff's land, involving dispute as to beginning point designated in patent to plaintiff's land, which beginning point had been fixed by report of three processioners, defendant held not to have sustained burden of showing that such beginning point as fixed by processioners' report was incorrect, which report, under Ky. Stats., section 2374, is made prima facie evidence against interested parties and those claiming under them.

H. M. BROCK and W. A. BROCK for appellant.

HALL, JONES & LEE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In July, 1845, on a survey made in December, 1843, there was patented to James Howard, called in this record James B. Howard, 400 acres of land in Harlan county on Kitts' creek of Clover fork of Cumberland river.

The beginning point as recited in the patent is:

"Beginning on a sugar tree and two buckeyes near the top of the mountain (Little Black Mountain) at the head said creek."

Kitts' creek runs approximately from south to north, and heads up against that part of Little Black Mountain running generally, east and west. There are two forks of Kitts' creek, one called the right fork and the other the left fork, and each of those forks in turn have small tributaries heading up against Little Black Mountain at different places, and some of those small branches of the two forks head near to each other.

The original patent only refers to the place of beginning at "the head said creek," and does not indicate whether the beginning point is on the headwaters of the right or the left fork of Kitts' creek.

In January, 1882, on a survey dated in August, 1881, there was also issued to James Howard a patent for 120 acres of land lying, as we understand, immediately to the west of the 400-acre patent issued many years theretofore. From the description in the last named patent we are unable to ascertain whether there was any interference with or lap upon the 400-acre patent.

James Howard continued to own each of these tracts of land until 1898, at which time, he being an old man, conveyed the same to several of his children. The 400 acre patent he conveyed to several of his children jointly, other than the appellant, James K. Howard, and to him conveyed other lands including a part of the 120-acre patent.

In his deed to the 400-acre patent he designated the beginning point as,

"on a buckeye and sugar tree on the top of the mountain at the head of said creek,"

and referred to the patent for courses and distances. In that conveyance he warranted the title.

In his deed to appellant, James K. Howard, embracing a portion of the land in the 120-acre patent, and which is referred to in the deed as tract No. 2, he adds at the close of the habendum clause:

"I only warrant title to the second tract that is not covered by older patents."

Thereafter, about 1903, when James F. Skidmore had become the owner of the 400-acre patent, appellant, James K. Howard, took some timber from what Skidmore conceived to be a part of the 400-acre patent, and which James K. Howard doubtless believed was from a part of the 120-acre patent conveyed to him by his father. Skidmore therefore instituted an action against James K. Howard in the quarterly court and recovered a small judgment against him for the value of the timber thus taken. The controversy between them involved the correct beginning point of the 400-acre patent, and shortly after this controversy, at the instance of Skidmore, the processioners of Harlan county were convened at or near the point in controversy to fix the beginning of the 400-acre patent and mark its boundaries. James K. Howard and others supposed to be interested were given notice of that convening, and James K. Howard was present in person. The processioners took upon that occasion three depositions, among them being that of a man named Farmer, who was one of the chain carriers when the 400-acre patent was surveyed.

Upon the evidence of Farmer and others, although there was at the time some controversy as to the correct beginning point, the processioners fixed it at the point claimed by Skidmore, and designated by Farmer, and not at the point claimed by James K. Howard.

This result so reached by the processioners was properly certified to the county court and there recorded, and apparently was acquiesced in from 1903 to 1920.

About the latter date, however, in order to again raise the question, James K. Howard and an employe of his again entered upon the disputed tract and threatened to continue to do so, whereupon the present owner, the appellee, brought this equitable action to enjoin them from further trespass.

Upon a hearing the chancellor below perpetually enjoined them, thereby in effect fixing the beginning point at the place fixed by the processioners.

It is conceded that if the beginning point was properly fixed by the lower court the judgment should be affirmed, and if on the contrary it should be fixed at the point claimed by appellant the judgment should be reversed, the real controversy being as to a small tract of land which would fall within the 400-acre tract. if the beginning point was properly fixed, and would fall within the 120-acre patent if it should be fixed as claimed by appellant.

The argument for appellant is that as the original 400-acre patent calls for the beginning point, "on a sugar tree and two buckeyes near the top of the mountain at the head said creek," that the beginning point fixed by the court and the processioners cannot be correct because at that point there is now only one sugar tree and one buckeye; while at the point claimed by him there is a sugar tree and two buckeyes. Not only so, appellant introduces several witnesses who testify that James Howard in his lifetime pointed out to them the place claimed by appellant as the beginning point of the 400-acre survey.

On the contrary, the appellees introduced the finding of the processioners in 1903, and the evidence then taken by them when James K. Howard was present, and particularly the evidence of Farmer, one of the chain carriers at the original survey. They also refer to the fact that in the conveyance made in 1898 by the original patentee, James Howard, to his children, he referred to the beginning point as

"On a buckeye and sugar tree on the top of the mountain at the head of said creek."

They likewise refer to the fact that with that as the beginning point of the 400 acre survey the patentee warranted title to the 400-acre patent; and to the further fact that in his deed to James K. Howard he expressly declined to warrant the title of the 120-acre patent in so far as it might interfere with elder patents.

It may be entirely possible, if not even probable, that in the long lapse of years from 1843 to 1898 one of the buckeyes referred to as the beginning point may have been destroyed or obliterated. Not only so, in 1898 when James B. Howard made the conveyances to his children he was the owner of both of those patents at that point, and if he chose to embrace in his deed to one set of his

children, to the 400-acre patent, a small portion of the 120-acre patent by changing slightly the description of the 400-acre patent, he undeniably had a right so to do.

However, we are convinced that either in the first place there was an error in the call of the patent for the beginning point, or that by the ravages of time one of the buckeyes has been destroyed, and this conclusion is in accord with the beginning point referred to in the conveyance of 1898 made by the original patentee, and is in accord with the finding of the processioners at a time when one of the men who made the original survey was living, and whose testimony they then had.

The statute (section 2374) makes the report of the processioners *prima facie* evidence against the interested parties and those claiming under them. This places the burden in any subsequent proceeding upon the parties claiming against the report, and that burden the defendant in this case has not sufficiently met. Crouch v. Wainscott, 122 Ky. 107.

This conclusion makes it unnecessary to pass upon the question of estoppel raised by plaintiff, or the question of evidence decided against it by the lower court.

Judgment affirmed.