## Shireman et al. v. Null et al.

June 11, 1948.

W. A. Blackburn and Joseph S. Freeland for appellants.

C. H. Wilson and Charles Ferguson for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This case involves the location of a property line between a 68-acre tract of land owned by appellants and a 54½-acre tract owned by the appellee Fluorspar Consolidated, Inc., on which the appellee William Null has a mineral lease. Counsel for appellees admit that the statements in brief for appellants concerning the description of the property in dispute is correct, and we shall adopt the substance of these statements.

The appellants own a tract of land in Crittenden County which is known as the Hickory Cane mining property, and the appellee Fluorspar Consolidated, Inc., owns an adjoining tract which is variously referred to in the evidence as the Brown tract, the Sullenger tract and the Null tract. For many years both tracts have been mined for Fluorspar by their respective owners and their predecessors in title. The property line between the two properties, which is the line in controversy in this action, runs almost due north and south, the Hickory Cane property lying to the east of this line and the Brown or Sullenger or Null property lying to the west of it. In appellants' deed the line is described as running north 2 degrees west, and in appellee's deed it is described as running south 2 degrees east. Appellants' property is described as follows: "Beginning at a large black oak on the South side of branch, corner of the Dave Franks survey; thence with the Franks line S 70½ E 38 poles to an elm and sweet gum near Glendale Schoolhouse and corner to Gus Terry; thence with his line S 21½ W 147½ poles to two black oaks; *thence N 2 W (passing Blake Terry's corner at 27 poles in all 140 poles to a dead black gum on the side of the road;* thence S 87 W 86 poles to a stake Blake Terry's corner; thence N 50½ W 19½ poles to a stake or stump on the side of the road also in Blake Terry's fence row; thence N 26 E 32 poles to a black oak in S. A. Johnson's line; thence N 86½ E (passing an old water stump corner at 94 poles) in all 98 poles to center of branch; thence meandering up the branch, S 20 W 3 poles; S 26 E 5 poles; S 15½ E 5¼ poles; S 22 E 3¾ poles; S 60¾ E 5½ poles; S 77 E 4½ poles; S 25¼ E 5½ poles; S 3¼ E 9½ poles; S 6 E 12 poles; S 31¼ E 8 poles; S 23½ W 7½ poles; S 37½ E 6 poles to the beginning containing 68 acres."

Appellee's property is described as follows: "Be-

ginning at a large white oak, five feet on the South side of a line between G. A. Terry and the heirs of Thos. H. Clark and also division corner between said parties; running thence with said division line S 80½ W 44 poles to hickory at the corner of the fence; thence N 88½ W 29 poles to a stone with sassafras pointer; thence with another division line N 11½ W 118 poles to a stake with small black oaks and dogwood pointers; thence N 87 E 85 poles to a gum; *thence S 2 E 114 poles to the beginning,* containing 54½ acres by survey.''

The calls which are italicized in the two foregoing descriptions are the calls to the line in controversy. The line described in appellants' deed extends 27 poles south of the large white oak referred to as the beginning point in appellee's deed, and this explains the difference in the length of the line described in the two deeds. The dispute centers around the location of the large white oak tree the beginning point referred to in appellee's deed, and the gum, or dead black gum, which marks the northerly end of the line in dispute. The gum has disappeared. There is now a large white oak standing in the general vicinity of the southern end of the line, but the parties are in complete disagreement as to whether it is near the corner. One witness for the appellants, Avery H. Reed, a surveyor, stated that this white oak tree is a corner tree and the beginning point referred to in appellee's deed. He based his statement on the fact that the white oak is a large tree with three hacks in it, marking it as a corner. All of the other witnesses for the appellants testified that the tree now standing is not the corner, but that a large white oak, known as the ''bee tree,'' which was cut down in 1908 was the corner, and the present tree was marked as a pointer. The bee tree, according to these witnesses, stood from 7 to 11 feet north and west of the present white oak. There is evidence by appellees that many years ago a large tree stood about 35 feet east of the present white oak, and there is now a depression in the ground at that point. Numerous surveys of the disputed line were made with varying results. Avery Reed, for the appellants, accepted the large white oak now standing as in the line, while the surveyors for the appellees fixed the line running north 2 degrees west through a point 34 feet and 8 inches east of the large white oak. They ar-

rived at this result by starting at two concrete markers at the southern end of the line and also by beginning at a black gum, a recognized corner in an adjoining tract of land, and running a line which included the western and southern boundaries of appellee's tract. The last call of this line passed the large white oak and ended at a point about 35 feet east of it.

The chancellor, on account of the confused condition of the evidence, refused to adopt the theory of either party to the litigation, and adopted a theory of his own for a solution of the problem. He directed that a survey be made beginning at a corner of appellants' property near the Glendale schoolhouse; that the location of the southern end of the 140 pole line, the northern 114 poles of which is in dispute, be fixed by running the call S 21½ W 147½ poles, and that the line in dispute be then located by running a line N 2 W 140 poles. Two surveyors were selected to run the lines as directed by the chancellor with the result that the division line passed 57 feet east of the white oak tree claimed by appellants as a line tree, not 34 feet 8 inches east of the tree the location of the division line claimed by appellees to be correct. The chancellor, in accepting a concrete pier in the margin of an old road near the Glendale schoolhouse as a recognized corner, overlooked testimony to the effect that this pier or marker had been moved about 30 feet by workmen when the road was being repaired. This testimony was undenied. The judgment established the division line in accordance with the report of the two surveyors, and reads in part: "* * * it is now adjudged by the Court that the location of the line between the lands known as the Hickory Cane property and the lands known as J. A. Robinson property, or Sullenger property, the former being the lands of plaintiffs and the latter the lands of defendants, is determined by beginning at a point 147½ poles or 2433¾ ft. from the concrete marker near the Glendale schoolhouse, running therefrom on a course of S 21½ degrees to a point where said surveyors drive into the ground a half in. galvanized pipe near two concrete markers at a distance of 48.18 ft. and 46.15 ft. respectively, as shown in said report, and running from said point N. 2 W. passing the lands of defendants, running a total distance of 2310 ft. to a point where a ¾ in.

galvanized pipe was driven into the ground by said surveyors, said line passing 57 ft. to the east of a 30 in. white oak * * *.''

The division line as established by the judgment is palpably incorrect. There are three volumes of evidence, and no useful purpose would be served by making a detailed analysis of it. We have carefully read and considered the record, including the report of processioners made on October 17, 1944, and have concluded that the weight of the evidence is to the effect that the division line passes through a point 34 feet 8 inches east of the white oak referred to in the evidence. A line thus drawn conforms to lines and corners in deeds to other tracts of land adjoining the two tracts owned by appellants and appellees. Appellants insist that the report of the processioners fixing the white oak as the southern end of the division line is, under KRS 73.250, prima facie evidence of its location, and that this report was ignored by the chancellor. The purpose of processioning, under KRS 73.250, is to perpetuate evidence, Crouch v. Wainscott, 122 Ky. 107, 91 S. W. 289, but this evidence may be rebutted in a subsequent proceeding. Howard v. Clover Fork Coal Company, 207 Ky. 674, 269 S. W. 1017; Carter v. Roberts, 203 Ky. 224, 262 S. W. 10. The processioners in the present case met on the ground, heard a small amount of evidence, and had a line run N 2 W beginning at a white oak. This tree was accepted as the beginning point merely because appellee's deed referred to a large white oak. As heretofore stated, appellants' own witnesses testified that this white oak was not the corner tree referred to in the deed. The processioners' report is entitled to little, if any weight.

This action was begun when appellants filed a petition in which they alleged ownership of the land on which William Null had sunk a mine shaft. Null was named defendant, and plaintiffs asked for an accounting by him for all minerals theretofore taken from the land. They also sought to enjoin him from operating the mine in the future. The Fluorspar Consolidated, Inc., filed an intervening petition setting up its claim to the land in dispute. Appellants now insist that the court erred in permitting this intervening petition to be filed. The facts bring the case squarely under section 29 of the Civil Code of Practice, which reads: ''In an action or

proceeding for the recovery of real or personal property, or for the subjection thereof to a demand of the plaintiff under an attachment or other lien, any person claiming a right to, or interest in, the property or its proceeds, may, before payment of the proceeds to the plaintiff, file, in the action, his verified petition, stating his claim and controverting that of the plaintiff; whereupon the court may order him to be made a defendant; and upon that being done, his petition shall be treated as his answer. But if he be a nonresident he must give security for costs.''

The intervenor claimed ownership of the minerals in the disputed strip of land, and its rights would be directly affected by any judgment that might be rendered between the original parties. The court properly overruled appellants' objection to the filing of the intervening petition. Hindert v. Smith, 270 Ky. 666, 110 S. W. 2d 454.

The judgment is reversed with directions to establish as the division line between appellants' property and the property of the Fluorspar Consolidated, Inc., a line running N 2 W through a point 34 feet 8 inches east of the white oak referred to in the evidence.