316 So.2d 16 (1975)
John J. BORDLEE, Sr.
v.
PAT'S CONSTRUCTION COMPANY, INC.
No. 6904.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Sam J. Chauppette, Chauppette, Genin, Mendoza & Parent, Marrero, for John J. Bordlee, Sr., plaintiff-appellant.
Roberts, Sanders & Perlis, Sharon A. Perlis, Metairie, for Pat's Construction Co., Inc., defendant-appellee.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This case involves an alleged loan of money by plaintiff, John J. Bordlee, Sr. to defendant, Pat's Construction Company, Inc. Defendant contends a loan was never made and the trial court granted judgment in favor of defendant dismissing plaintiff's suit. Plaintiff appealed.
Defendant corporation is a construction company in the business of building jetties and marine structures. Plaintiff was the vice-president and general manager of this corporation, handling all of its business operations. The record shows the following undisputed facts: The corporation was in *17 questionable financial condition and so somewhere around May 1, 1972 plaintiff offered to advance the company money to meet its payroll. Mrs. Myrtle Bertucci, president of Pat's Construction Company, declined this offer telling plaintiff she would raise the money herself. On May 3, 1972 Mrs. Bertucci deposited $8,000.00 to the company's account. This money came from a loan made by Mrs. Bertucci's brother-in-law.
From this point on the facts are in dispute. On May 19, 1972 a deposit of $8,000.00 in cash was made to the company account by plaintiff. The source of this deposit is the dispute around which this case arises. Plaintiff contends that $6,800.00 of the cash deposit was his money loaned to the company with the consent of Mrs. Bertucci.
Plaintiff testified that on May 16 a construction job at Grand Isle, La. was completed by the corporation and upon his return to the main office he once again discovered that the company was in financial straits. He states that on May 18, at a meeting between himself and Mrs. Bertucci at the main office, he again offered to loan the company some money to carry it along until the final payments were made on the Grand Isle job. Plaintiff testified that Mrs. Bertucci accepted this offer. Plaintiff further asserted that no one else attended this meeting and no note or document was made to evidence this loan. The only supporting evidence is that on May 19 currency in the amount of $8,000 was deposited as evidenced by bank records and it is not denied that plaintiff made the deposit. It should also be noted that the carbon copy of the deposit slip was altered by plaintiff to show that $1,200.00 of the cash deposit was company money and $6,800.00 was a loan from himself to the company.
Plaintiff accounts for the source of the $8,000.00 in the following manner: $1,200.00 was cash from the sale of two propellers owned by the company. He asserts that the sale was made on May 18 and that he received a check which he immediately cashed, receiving twelve one hundred dollar bills for the check. The remaining $6,800.00 was sixty-eight one hundred dollar bills that he had been keeping at his house since January of 1972. Plaintiff testified that he had such a large sum of cash because he had personally signed a bond in favor of the State of Louisiana for completion of the Grand Isle job. He then proceeded to withdraw all his money from his three personal accounts so that if the company defaulted on the bond most of his personal assets could not be reached.
Defendant contends simply that no meeting occurred between plaintiff and Mrs. Bertucci on May 18 and that plaintiff never offered any money to defendant beyond the offer of May 1, which all parties agree was refused. As to the source of the $8,000.00 deposit of May 19 Mrs. Bertucci could not be positive as to its source, but stated that plaintiff was completely in charge of running the company and handling its books. It also appears that the company records reflect outstanding accounts receivable which could have been the source.
This case is governed by RCC articles 2232 and 2277 which deal with proof of obligations. RCC article 2232 places the burden of proof upon plaintiff to prove the existence of the loan and RCC article 2277 describes how he must prove it; that is that agreements involving more than $500.00 must be proved at least by one credible witness and other corroborating circumstances. We hold that plaintiff has failed to carry his burden of proof.
In all such civil matters plaintiff must carry the burden imposed upon him by a preponderance of the evidence. This simply means that viewing the evidence as a whole the existence of a fact is more probable than its nonexistence. Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (Supreme Court 1973); Marcotte v. Travelers Insurance Co., 258 *18 La. 989, 249 So.2d 105 (1971); Hanover Insurance Co. v. Jacobson-Young, Inc., 294 So.2d 564 (La.App.4th Cir. 1974).
In this case plaintiff was the only witness as to the existence of the loan. We agree with him that our courts have allowed the requirement of ". . . one credible witness . . ." to be satisfied by the plaintiff alone.[1] However, one witness is not enough to carry the burden of proof, other corroborating circumstances must be proven and it is here that plaintiff has failed. Dodd v. Schell, 207 So.2d 807 (La.App.4th Cir. 1968); Succession of Couder, 46 La.Ann. 265, 14 So. 907 (1894); Brady v. McWilliams, 19 La.Ann. 433 (1867).
The following circumstances lead us to believe that it is improbable that the $6,800.00 obligation ever existed: 1) Plaintiff claims that he and his son went to see Mrs. Bertucci some time after the alleged loan was made; defendant denies such a meeting. Plaintiff claims that this meeting was to demand payment of the loan and that he brought his son along solely as a witness. Yet, plaintiff's son did not testify at the trial. 2) Plaintiff's testimony as to the source of the disputed deposit hinged in large part on the fact that he claims the deposit was made in eighty one hundred dollar bills and he had lots of one hundred dollar bills at home. Upon cross examination plaintiff admitted that actually his wife withdrew a part of the money from his personal accounts and he couldn't truly testify that she made the withdrawals in one hundred dollar bills. Plaintiff's wife did not testify at the trial. 3) We find it unlikely that an experienced businessman, who was also the company bookkeeper, would loan $6,800.00 to a company he knew to be financially unsound and yet not get evidence of the loan in writing. 4) We find it unlikely that plaintiff, who was also vice-president and general manager, would make a large cash loan to the company without written evidence of security and then three days later resign and start a competing business shortly thereafter. 5) Plaintiff could not satisfactorily explain the alteration of the May 19 carbon copy deposit slip.
For the above reasons we affirm the judgment of the trial court. Plaintiff-appellant to pay all costs.
Affirmed.
NOTES
[1] The trial judge in his reasons for judgment did not directly rule on the credibility of plaintiff as a witness. He does state that the source of the $6800.00 was "merely the testimony of plaintiff", that this was denied by defendant, and ruled that plaintiff did not carry the burden of proof in that respect. It may thus be reasonably concluded that he did not find plaintiff to be completely credible.