**Charles R. STRICKLAND, Plaintiff,**

v.

**MARATHON OIL COMPANY et al., Defendants.**

Civ. A. No. 76–2028.

United States District Court, E. D. Louisiana.

Feb. 28, 1978.

---

7.  *See* note 1, *supra.*

James A. George, Baton Rouge, La., Leonard B. Melvin, Jr., Laurel, Miss., for plaintiff.

Michael D. Meyer, New Orleans, La., for intervenor, Travelers Ins. Co.

Ashton R. O'Dwyer, Jr., New Orleans, La., for defendant.

## BACKGROUND

CASSIBRY, District Judge:

On November 23, 1977 Marathon Oil Company brought a motion for summary judgment before this court contending that the plaintiff was their borrowed servant. Plaintiff Strickland denied this. Both sides were heard on the issue.

Immediately after the hearing, counsel for both parties plus counsel for an intervenor, Travelers Insurance Company, met in the hallway outside the courtroom and began to discuss the possibility of settlement. This court was not advised that such negotiations were underway. Before a settlement was perfected, I ruled on the motion for summary judgment by minute entry. The plaintiff is now before me contending that a settlement was reached after my ruling and moving that I compel settlement.

A hearing was held on plaintiff's motion to compel settlement, as well as defendant's antithetical motion to enter final judgment, on January 11 and January 30, 1978. Witnesses were called, including the three attorneys involved in the discussions.

Plaintiff argued that an offer of $30,000, consisting of a joint contribution by Marathon and Travelers, was made by Marathon's counsel before the minute entry granting summary judgment in Marathon's favor. He further alleged that it was clearly understood by all three attorneys that the offer was to remain outstanding no matter what this court's decision turned out to be and that even if it were not so understood, plaintiff's counsel in fact accepted the offer before it was revoked. Therefore, he argued that Marathon is under an obligation to pay its portion of the proffered settlement. Marathon's argument was that the offer was never made to be open-ended beyond a decision by this court and that the offer was effectively revoked before it was accepted.

Testimony shows that Marathon's attorney did make an offer of settlement of $30,000 to plaintiff's attorney on December 1, 1977. All witnesses are in accord on that point. Agreement ends there.

## WAS THE OFFER TO BE OPEN–ENDED?

Attorney for Travelers, Mr. Meyer, testified that he heard no discussion between Mr. George, attorney for plaintiff, and Mr. O'Dwyer, attorney for Marathon, in which a time limit on the offer was discussed. He did say that there were statements to the effect that the settlement should be consummated quickly. He could not say that he had heard either O'Dwyer or George discuss the offer in terms of whether it was to be affected by the decision of this court on the motion.

Mr. George testified as follows: that he and O'Dwyer specifically discussed the pending motion and its effect on the offer; that he asked if the offer was to be outstanding no matter what the outcome; and that Mr. O'Dwyer replied that it was and that the offer had nothing to do with the outcome of the motion. Mr. O'Dwyer testified that he did not say the offer would remain outstanding and that it was perfectly clear that the offer was conditioned upon acceptance before a ruling on the motion. .

Whatever the understanding, Mr. George informed his Mississippi co-counsel, Mr. Melvin, and his client of the offer. Both testified at the hearing. Mr. Melvin stated that he, Mr. George and Mr. Strickland all participated in a conference call on December 5, 1977. Mr. Melvin testified that he asked if the offer was firm and was told that it was by Mr. George. Mr. Strickland indicates that he was worried that the offer might be withdrawn but was told by the two attorneys that it was a firm offer.

## WAS THE OFFER REVOKED?

All of the parties talked with one another on the phone over the course of the next few days. A minute entry dated November 30, 1977 but not filed with the clerk until December 6, 1977 granted the motion for summary judgment by Marathon. Mr. Meyer and Mr. O'Dwyer received copies on December 7. O'Dwyer testified that he dictated a motion for entry of final judgment that day.

George called O'Dwyer on December 8, 1977, asking him if what he understood from Meyer was correct, that the offer had been withdrawn. At this point, testimonies once again diverge. George testifies that O'Dwyer said that the offer was going to be withdrawn, but that it wasn't up to him and he would have to get back to his client. O'Dwyer testified that when asked if the offer had been withdrawn, he replied, "You're 100% correct and you've been out-quicked," or words to that effect. He also testified that his statement to George that he was going back to his client was motivated not by any need for any further authority but a desire to explore every avenue to reinstitute settlement negotiations to avoid the present dispute.

On December 9, 1977 George called O'Dwyer and told him that the offer was accepted. George says that it was then that O'Dwyer said, "The offer is withdrawn." O'Dwyer testified that he responded by reminding George that the offer had been withdrawn on the previous day.

## THE DECISION

When two honest and intelligent persons view the same event and come away with different versions of what occurred, the truth is hidden from a court somewhere between the two mutually exclusive stories. In such a case, a court must frequently abandon its desire for certainty and clarity and satisfy itself with deciding who is to be the winner. In doing so, it must take refuge in rules such as those that allocate the burden of proof. I have before me such a situation.

The construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally. *Florida Education Ass'n v. Atkinson*, 481 F.2d 662 (5th Cir. 1973).

The first requirement for the formation of a contract is an offer. LSA–C.C. 1798. If I should find that an offer was made in this case, there are two sets of circumstances that would lead to the conclusion that a contract or obligation was formed. First, it is possible that the offer was irrevocable up

to and through the acceptance by plaintiff on December 9, 1977 (both parties agreed that plaintiff communicated his acceptance as of this date). Second, if I find that the offer was not irrevocable up to and through acceptance, I may still find that a contract existed because the offer was not revoked before acceptance on December 9, 1977.

To dispose of the first step, there is no question that an offer of $30,000 was made by Marathon to the plaintiff in this case. Both parties testified to the offer and amount, and I find that it was made.

■ Turning to the first of the alternative analytical paths that would lead to a finding of contract, I find that Louisiana law does in fact allow for situations where a contract is irrevocable for a certain period of time.

LSA–C.C. 1809. Revocation of offer before acceptance

Art. 1809. The obligation of a contract not being complete, until the acceptance, or in cases where it is implied by law, until the circumstances, which raise such implication, are known to the party proposing; he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination.

■ The general rule is that an offer may be revoked any time before acceptance. *Wagenvoord Broadcasting Co. v. Canal Automatic Transmission Service, Inc.,* 176 So.2d 188 (La.App.1965); *National Co. v. Navarro,* 149 So.2d 648 (La.App.1963). The limitations upon that general rule have been expressed in several cases. One of the latest is *W. M. Heroman & Co. v. Saia Electric, Inc.,* 346 So.2d 827 (La.App.1977), in which the court found that a bid by a subcontractor was irrevocable until the bid by the general contractor to the owner had been declined or the project had been abandoned, provided an unreasonable time had not elapsed. The court based its finding on all of the evidence in the case, including reference to a custom in the building trade that such bids were irrevocable. 346 So.2d 830.

■ In spite of the possibility of irrevocability in the case before me, the plaintiff carries a heavy burden of proof on the issue. This burden comes from at least two sources.

First, LSA–C.C. 2232 requires the plaintiff to prove all aspects of a contract, including its terms.[1] *New Orleans Silversmiths, Inc. v. Wormser,* 258 So.2d 592 (La.App.1972); *Walters v. Edwards,* 212 So.2d 749 (La.App.1968). The burden is upon plaintiff Strickland to prove that one of the terms of the settlement offer was that it was to be irrevocable for a certain length of time or that, from the circumstances of the case, Marathon may be supposed to have intended to include irrevocability as a term. This burden means that the plaintiff must prove the fact by a preponderance of the evidence. *Bordlee v. Pat's Construction Co.,* 316 So.2d 16 (La.App.1975).

The second source of plaintiff's burden comes from LSA–C.C. 2277 which requires that oral contracts for the payment of money above five hundred dollars in value must be proved at least by one credible witness and other corroborating circumstances. Together, these two articles place a heavy burden on plaintiff Strickland.

The plaintiff has produced one witness to say that one of the terms of the offer was that it was to be outstanding no matter what the outcome of this court's decision on the motion for summary judgment. Plaintiff's counsel has produced no other corroborating evidence as required by Art. 2277 except his statements to third parties explaining what he believed the terms of the contract were and the actions of those third

---

1. LSA–C.C. art. 2232. Burden of Proof

Art. 2232. He who claims the execution of an obligation must prove it.

On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation.

parties in reliance upon what he had told them. This sheds little or no light on what the terms of the agreement actually were. Defendants have produced a witness that has testified that irrevocability was never mentioned.

Plaintiff's version of the events would require me to find that the offer was open-ended, that plaintiff was in a position to decide to accept whenever he wished, or, at the least, that the offer could have been revoked for any one of a myriad of reasons, but not for the reason that this court had decided the summary judgment motion in favor of defendant. The strong evidence required for such a finding was not presented. This is not a case like the *Heroman* case, *supra*, in which an offeror is prohibited from revoking during a reasonable time which "from the circumstances of the case he may be supposed to have intended to give to the [offeree], . . . ." LSA–C.C. art. 1809. Considering all of the circumstances of the case, I find that the offer by Marathon was revocable at the time of the December 8, 1977 telephone conversation. *See* Litvinoff, *Offer and Acceptance in Louisiana Law: A Comparative Analysis: Part I—Offer*, 28 La.Law Rev. 1, 33–61 (1967).

■ This does not end the matter. As I indicated earlier, even if the offer were revocable, there is a serious question as to whether it was revoked before acceptance. The telephone conversation of December 8, 1977 between counsel for the two parties is crucial. Again both witnesses give different versions of the words that passed between them, and, quite naturally, they each reach different legal conclusions as to whether the words actually spoken constitute revocation of the offer. On this issue plaintiff also carries the double burden discussed above imposed by the two articles of the Civil Code.[2] Again the testimony of the two witnesses is equally credible as to whether Marathon's counsel revoked the offer. Again there is no way of deciding between the two. One version leads to an inference that the offer was revoked, the other to an inference of impending revocation not yet completed or expressed.

■ Plaintiff makes much of the fact that Marathon's counsel had no apparent authority to revoke the offer on December 8 because he needed the permission of his client to do so. However, the testimony showed that counsel had authority to offer a certain sum of money in settlement and that he had offered less than that full sum. Although he may have needed authority to make an offer, there was no evidence that he required authority to set the amount at a figure less than the maximum authorized amount or to withdraw an offer if he felt it was in his client's best interests. These considerations lead me to the conclusion that the issue of counsel's authority has little or no bearing on the issue of revocation. Without this or some other evidentiary aid, plaintiff has once again failed to meet his burden of proving the execution of the obligation he now seeks to enforce. Because the plaintiff has failed to show either that the offer was irrevocable up to and through acceptance or that the offer was accepted before it was revoked, I must deny his motion to compel settlement[3] and grant defendant's motion to enter final judgment.

**2.** There is some potential for confusion inherent in LSA–C.C. 2232 that deserves some clarification. The second paragraph of the article (quoted on the previous page) might be thought to shift the burden of proof to defendant on the issue of whether an offer was revoked. This would be incorrect. It is only after a plaintiff has proven the execution of an obligation (not merely the making of an offer) that defendant must bear the burden of proving extinction of that obligation. Execution of the obligation requires proof of offer as well as proof of acceptance without intervening revocation. Defendant here is not claiming *extinction* of an obligation, but that the obligation was never executed at all.

**3.** An alternative ground for an identical result in this case would be LSA–C.C. art. 3071, not cited or argued by either counsel at the hearing. It states that a compromise putting an end to a lawsuit "must be reduced into writing." *St. Amand v. Marriott Hotel, Inc.*, 430 F.Supp. 488 (E.D.La.1977), *Carter v. Mule*, 346 So.2d 882 (La.App.1977). This dispute provides a good example of why the statute requires a writing. Without citation by the parties and full exposition of their views during the hearing, I prefer to ground my decision on the discussion and analysis in the body of the opinion.