419 So.2d 1 (1982)
PELICAN ELECTRICAL CONTRACTORS
v.
John S. NEUMEYER and Roy J. Anselmo, Jr. d/b/a Georgie Porgie's Restaurant and Discotheque.
No. 12783.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied September 24, 1982.
*2 Robert McDonald, New Orleans, for defendants-appellants.
Frank J. Rabito, New Orleans, for plaintiff-appellee.
Before BARRY, WARD and WILLIAMS, JJ.
WARD, Judge.
This suit arises out of a construction contract for electrical work at Georgie Porgie's, a restaurant and discotheque, located in the Hyatt Regency Hotel in New Orleans. Pelican Electrical Contractors, Inc. [Pelican] has sued the co-owners of Georgie Porgie's, John Neumeyer and Roy Anselmo, Jr., for the unpaid portion of the contract price and for payment of "extras" supplied during construction. Neumeyer and Anselmo's defenses and claims will be discussed in detail later, but essentially they have denied owing money under the contract or for any "extras," and they have reconvened, seeking damages caused by the failure of Pelican to complete construction. The Trial Judge referred the matter to the Commissioner who, at the request of Pelican, appointed an expert to investigate the contending claims of the parties, to evaluate them, and to report his conclusions. After receipt of the report, the Commissioner conducted a hearing and recommended to the Trial Judge that he render judgment in favor of Pelican. Defendants objected to that recommendation, but the Trial Judge accepted it, and he rendered judgment in favor of Pelican and against defendants. Defendants have appealed from that judgment alleging numerous errors in the Commissioner's factual findings. Pelican has appealed, asking for an increase in the judgment.
The issues in this appeal arise from factual disputes brought about by oral agreements and a written contract. The oral agreementsvalid contractswere made before and after the signing of the written contract; nevertheless, the written contract will be described first.
The written contract was signed by James Higginbotham, as owner of Pelican, and by both defendants, as co-owners of Georgie Porgie's, and was for the installation of electrical wiring, equipment, and fixtures for the restaurant and discotheque, but not for the dining room. Although Pelican supplied the contract, it was unusual because it was nothing more than a printed form copyrighted by an out-of-state publisher for use in the construction trade in other states. According to its terms, Pelican made a proposal or bid for the *3 electrical work, and defendants Neumeyer and Anselmo accepted it. The contract also contained a vague description of the work to be performed, a reference to a drawing to fill in the details, and an agreed price of $34,500.00. Although it was dated June 8, 1977, there was no indication of when Neumeyer and Anselmo accepted the bid. It was unusual in more ways: there was no date for commencement of construction, and, more importantly, there was no date for completion of construction. Additionally, as if this were not enough, there was a provision giving the defendants "the option to relocate and change [the electrical wiring, equipment and fixtures] as job necessitates," although it also contained a provision standard in the industry that "deviations from ... specifications will be executed only upon written orders, and will become an extra charge."
Not only was the contract unusual, there also was conflicting testimony given during the trial both about the events that occurred before and after the signing of the contract and about the oral agreements between the parties. Nevertheless, in spite of the conflicting evidence, it is possible to piece together a narration of those events which is logical in sequence and consistent with the Commissioner's findings of fact.
The testimony indicated that Neumeyer employed Mr. John Bohlke, an architect, to design the construction plans for Georgie Porgie's, and Bohlke subcontracted with Mr. Mario Zervigon, an electrical engineer, to design the electrical part of the plans. In October 1976, Zervigon gave his electrical design plans to Bohlke, who gave the plans to Neumeyer, who distributed them to the subcontractors. Higginbotham received them early in April 1977 (from a third party who had declined to bid on the job), and he met with Neumeyer later in the month for the purpose of submitting a bid by Pelican. They met in Georgie Porgie's and, after discussing the plans, Neumeyer, who had supervised construction of several hundred lounges, accepted Pelican's bid of $34,500.00. Relying on this oral contract, Pelican ordered material for the job, and construction began before May of 1977. From the very beginning and throughout the course of four months of construction, Neumeyer issued numerous change orders, and Pelican complied with these orders. Some change orders were minor; some were not.
Finally, on June 8, 1977, the written contract was signed by Neumeyer and Anselmo, for Georgie Porgie's, and by Higginbotham, for Pelican. At the time of signing, a substantial amount of work had been done, and Neumeyer and Anselmo paid Pelican the first installment. Work continued, and construction in the restaurant and discotheque progressed.
Sometime before the completion of that work, Neumeyer acquired space for a dining room adjacent to the lounge, and after this, Neumeyer, Anselmo and Higginbotham entered into an oral agreement for Pelican to do the electrical work for the newly acquired dining area. The work was insubstantial compared to that in the original contract, and the agreed price was $2,800.00. It was never reduced to writing and was much like all the other change orders given by Neumeyer to Higginbotham informal, without plans or specifications.
Neumeyer and Anselmo were anxious to open Georgie Porgie's, and Neumeyer continually pressed for completion of the unfinished construction. Finally, although the work was not entirely completed, the doors opened for business on September 15, 1977, and Georgie Porgie's has operated continuously since that date.
After the opening, Higginbotham visited Georgie Porgie's in the latter part of September and presented a list of "extras" $19,504.00 worththat were the result of changes in the plans. At that time, Pelican had been paid $30,000.00 on the original contract price of $34,500.00, and some work remained to be done. Neumeyer examined the list and agreed to pay for some of the "extras," but not for others. Pelican stopped work, and shortly thereafter it filed suit, and this appeal followed.
In this appeal, defendants have alleged numerous reasons for reversing the factual findings of the Commissioner; they are *4 summarized for purposes of analysis. First, defendants contend that Pelican breached the contract when it failed to complete construction and Pelican, therefore, should not recover the unpaid portion of the contract price. Second, they contend that the entire agreement between the parties was contained in the written contract which stated that orders for changes in construction, "extras," must be in writing before the defendants would be liable for them and Pelican, therefore, should not recover for "extras" supplied to fill the oral change orders. Third, in their reconventional demand, they contend that the work was done in a shoddy manner and that additional work was necessary to correct defects and omissions in the work that had been done and Pelican, therefore, should pay for the cost of correcting the defects and pay for the omissions. Finally, also in reconvention, they contend that the unreasonable delay in construction prevented opening on schedule, which caused additional expenses and loss of profits and Pelican, therefore, should pay for these damages caused by the breach of its contract.
The first contention of defendants, that Pelican breached the contract and should not recover under it, presents the factual question of whether there was substantial performance by Pelican because, as the Supreme Court stated in Airco v. Fink, 242 La. 73, 134 So.2d 880 (1961):
... the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.
....
... This is a question of fact. Among the factors to be considered [in determining whether there was substantial performance] are the extent of the defect(s) or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed.
The Commissioner applied those standards to this case. He found, although there was evidence of defects and omissions and although it cost the defendants at least $2,602.20 to correct them, the defects and omissions were insubstantial when compared to the contract price and the "extras." Further, he found that since Georgie Porgie's had opened for business within a reasonable time after work commenced and because it has operated continuously since that time, the purpose of the contract was not defeated. For these reasons, the Commissioner found there was substantial performance.
The standard of review of a Commissioner's finding of fact when it is adopted by the trial court is the same as that applied by an appellate court to any other factual finding of a district court: the finding of fact will not be disturbed unless it is manifestly erroneous. In the instant case, we hold the Commissioner's findings were not manifestly erroneous; there was substantial performance of the contract, and defendants must pay the contract price less whatever damages they may prove. Airco v. Fink, supra.
The second contention of defendants, that the contract authorizes payment only for written change orders, presents the question of whether they must also pay for "extras." As to those "extras," after the Commissioner had decided there was substantial performance of the contract, he proceeded on the premise that a fair treatment of the competing claims required a credit to Pelican for the "extras" and a credit to defendants for defects and omissions. Defendants vigorously objected to this procedure because the written contract prohibits it: liability for "extras" was limited to those authorized in writing. The Commissioner considered these arguments and rejected them. He found the parties made verbal agreements that abrogated the written contract, and he relied upon the following cases as authority for the rule that they may do so: A.A. Home Improvement Company, Inc. v. Shane, 217 So.2d 445 (La. App. 4th Cir. 1969); Huey Lumber & *5 Millwork, Inc. v. Jackson, 212 So.2d 538 (La. App. 1st Cir. 1968); Groner v. Cavender, 16 La.App. 565, 133 So. 825 (2nd Cir. 1931); and Wellman v. Smith, 114 La. 228, 38 So. 151 (1905). These cases clearly indicate that the Commissioner is correct; written contracts for construction may be modified by oral contracts and by the conduct of the parties, and this is true even when the written contract contains the provision that an owner is liable only if the change orders are in writing. Pamper Corporation v. Town of Marksville, 208 So.2d 715 (La. App. 3rd Cir. 1968), writ den. 252 La. 271, 210 So.2d 509 (1968). It is a question of fact, therefore, as to whether there were oral agreements that modified the written contract.
The Commissioner made a finding of fact: there were oral agreements between Neumeyer, acting for Georgie Porgie's, and Higginbotham, acting for Pelican, and the agreements modified the written contract. His finding is supported by the record, which described the numerous change orders, and shows Neumeyer's willingness to pay for some of them. Again, the question in this appeal is whether that finding is manifestly erroneous. It is not.
Defendants supported their third contention (that the work was done in a shoddy manner and that there were defects and omissions) by the testimony of their experts who examined the plans and the work. These allegations were also supported by the testimony of Mr. Lucien Vivian, the court-appointed expert. Defendants proved, and Pelican admitted, that there were defects and omissions, but both disagree with Mr. Vivian's opinion of the number of them and their evaluation.
Mr. Vivian determined their number when he went to Georgie Porgie's and compared the work completed with the plans, and he used an industry approved uniform cost analysis for his evaluations. He allowed a credit to defendants for correction of defects and omissions, and he allowed a credit to Pelican for additions to the contract. Although neither defendants nor Pelican was satisfied with Mr. Vivian's report, the Commissioner found it fair and impartial, and he approved this method of evaluation and adopted the findings of the expert as his own with only one change. That change was an addition to the plans made by Pelican for back lighting in an area of the building inaccessible for inspection by Vivian. The Commissioner, finding these additions proven by the evidence but omitted by Vivian because he could not view them, allowed Pelican a credit for their cost. After adding the cost of the back lighting and after offsetting the credits given Pelican for "extras" with the credits given defendants for defects and omissions, the Commissioner found that defendants owed Pelican $12,440.00, in addition to the $4,500.00 owed for the unpaid portion of the contract.
That finding of fact is also supported by the record. It is not manifestly erroneous. Neither defendants nor Pelican has proven it is, and it will not be changed.
The last contention of defendants, that Pelican owes damages for added expenses and loss of profits because it breached the contract, raises two issues: (1) was there substantial performance? and (2) if so, was there substantial performance within a reasonable time? We have already held there was substantial performance. But defendants also argue that even if there was substantial performance, Pelican failed to substantially perform within a reasonable time, and they claim loss of profits and added expenses for wages paid to employees occasioned by a delayed opening. They make this claim in spite of the fact that no date for completion had been specified in the contract. The applicable law is:
"... where no time for performance is specified, the inference will be supplied that the parties intended the obligation to be undertaken within a reasonable time. What constitutes a reasonable time must be determined by the circumstances of each case." Perrin v. Hellback, 296 So.2d 342 (La. App. 4th Cir. 1974), writ den. 300 So.2d 184 (La. 1974),
and further:
"It is well settled principle of law that a contractor's failure to complete a building *6 contract within the time specified therefor constitutes a passive breach thereof. It is equally well settled that the obligee seeking liquidated damages as a result of the late completion must first put the obligor in default. It is only in these instances where the contract expressly states that the expiration of the term assigned for performance constitutes a putting in default that the obligee is relieved from the necessity thereof." Binnings Construction Co. v. Louisiana Life Insurance Co., 139 So.2d 561 (La. App. 4th Cir. 1962),
and finally:
"When the breach has been passive only, damages are due from the time that the debtor has been put in default...." LSA-C.C. Art. 1933.
Therefore, since this contract did not state a term for performance of the work, it must be construed to require substantial performance within a reasonable time. The Commissioner found the work was done within a reasonable time. We agree with his findings. He also found that, even if there was not substantial performance within a reasonable time, Pelican was not liable for damages because neither Neumeyer nor Anselmo ever placed Pelican in default. We agree; defendants are not entitled to damages.
There is another contention that deserves only brief comment. Defendants complain that the expert appointed by the Commissioner was biased because he had previously done work as an electrical engineer for counsel representing Pelican. That allegation of bias is not supported by the record. Rather, the record indicates a competent, professional evaluation by a professional man who gave unbiased testimony. It would be unreasonable to conclude that Mr. Vivian, an electrical engineer, would write a biased report and give false testimony because of a prior business relationship with counsel. The Commissioner properly rejected this allegation.
The report of Mr. Vivian, otherwise very thorough, omitted an item for which Georgie Porgie's should be given credit. Pelican conceded that piping for the sound system specified in the contract was not installed. A credit was not given to defendants, and the judgment will be amended to give a $400.00 credit for that omission. Otherwise, the judgment of the trial court is affirmed. Cost of trial, including that for the experts' investigation and testimony, and cost of this appeal are to be paid by appellants, John Neumeyer and Roy Anselmo, Jr.