420 So.2d 1197 (1982)
E.A. BELL d/b/a Universal Engineering
v.
BADGER DREDGING, INC. and Continental Grain Company.
No. 5-140.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1982.
Collings & Collings, R. William Collings, Lake Charles, for plaintiff-appellee.
Don Almerico, Norco, John M. Crum, Jr., La Place, for defendants-appellants.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
GRISBAUM, Judge.
This is a suit on an oral lease agreement of a dredge and dredge equipment. From a judgment on January 22, 1981 awarding E.A. Bell d/b/a Universal Engineering, $47,524.95 with legal interest from date of judicial demand, for rental and repair costs on two "mudcat" dredges, appellant, Badger Dredging, Inc., appeals claiming that the trial court erred in awarding damages for rent and repair costs on dredges leased from Universal Engineering and in finding that the dredges and equipment supplied by Universal Engineering were not defective. We affirm.
E.A. Bell initially sued Badger Dredging, Inc. and Continental Grain Company for dredges and labor furnished by Bell for the improvement of property owned by Continental Grain Company. Bell effected a lien upon Continental Grain's property and contended Continental Grain was in solido liable with Badger for rental of dredges and labor furnished by Bell. On June 19, 1979 Bell moved for dismissal of its suit against Continental Grain reserving its right against Badger Dredging, Inc. Badger answered Bell's petition claiming among other things late delivery of equipment, failure to deliver in accordance to Badger's order, and payment in full. It also set forth as an affirmative defense that Bell breached its duty to deliver by supplying a defective dredge and asked in a reconvention demand for damages as a result of this breach.
*1198 The trial court found that Bell and Badger entered into a lease agreement for the use of a dredge in the sum of $15,000 per month, that Badger had an obligation to pay for repairs on the dredges due to improper operation of dredges, and that the equipment which Bell delivered was not "for the most part" defective crediting defendant for parts that were defective which it replaced at its cost.
Practically all the material facts were disputed by the parties. In order to fulfill a contract with Continental Grain Company to dredge a portion of Continental's property located in a bend in the Mississippi River, Henry Smith, president of Badger, contacted E.A. Bell, owner of Universal Engineering, to lease a dredge. Rental of equipment without Universal's personnel to operate the equipment was not a practice of Universal; therefore, some inquiry of a dredge rental company regarding the proper amount of rental payment was necessary before Bell could quote Mr. Smith Universal's price. Eventually, Bell and Smith agreed that Badger would lease a mudcat dredge from Universal. There is conflicting testimony and other evidence as to whether $15,000 or $20,000 per month was agreed as rent for 24-hour-a-day use of the Universal dredge.
Several days after the lease agreement was entered into Badger's trucks arrived to pick up the leased equipment. Replacement of a flexible hose which connected the pump to a suction line and a battery were necessary to make the dredge operable. While there is conflicting testimony as to when Badger was informed of these deficiencies, it is uncontroverted that Badger did agree to accept the dredge with these deficiencies and to secure and install a hose and battery and bill Universal for these.
From the start of the dredging project there were problems with the dredge. Defendant's witnesses testified that the pump was defective causing the discharge hose to burst. There was also testimony by defendant's witnesses that it had a malfunctioning spline with the spline gear totally nonfunctional and a defective pump clutch. Moreover, Badger's witnesses claimed that one of Universal's employees who assisted in the dredging when problems initially arose with the dredge was not able to operate the dredge properly and could not make the necessary repairs on it. Due to problems with the first dredge, Universal replaced it with another mudcat dredge. Defendant's witnesses testified that this dredge was also defective in that the clutch was slipping, the teeth on the auger were worn down and bent, and hoses on it were rotted due to its prior use in dredging of small ponds containing chemicals.
In contrast, plaintiff's witnesses testified that the defendant's employees operated the dredge improperly by using it beyond its capacity in an area (a bend in the Mississippi River) unsuited for the mudcat dredges and that defendant attempted to dredge materials that these particular dredges were unable to dredge.
This case is concerned with two issues:
1) Whether defendant who claims extinction of its obligation to pay rent has satisfied the requirements of proof under Louisiana Civil Code Article 2232; and
2) Whether the lessee caused damage to the equipment leased through its own fault thereby making it responsible for repair costs pursuant to Louisiana Civil Code Article 2721.
With respect to the first issue, Civil Code Article 2232 provides in part:
"... he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation."
The plea that the equipment leased was defective is an affirmative defense under Louisiana Code of Civil Procedure Article 1005, and Louisiana Civil Code Article 2232 requires that the defendant affirmatively prove its claim of extinction of its lease obligation to pay rent due to defects in the thing leased. Davenport v. Lemon Tree of Ruston, Inc., 230 So.2d 764, 767 (La.App. 2nd Cir.1970); Ray v. Martin, 117 So.2d 839, 841 (La.App. Orleans 1960). A litigant who pleads extinction of an obligation *1199 bears the burden of proving that defense by a preponderance of the evidence. Bohn Ford, Inc. v. Lanza, 347 So.2d 935, 936 (La.App. 4th Cir.1977). Proving by a preponderance of the evidence means considering the evidence as a whole, the existence of a fact is more probable than its nonexistence. See Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905, 913 (La.1973); Bordlee v. Pat's Construction Company, Inc., 316 So.2d 16, 17-18 (La.App. 4th Cir.1975).
In this case evidence relative to defendant's affirmative defense consisted merely of the testimony of the owner of Badger and several of its employees whose maintenance and operational experience with mudcat dredges developed only after the lease of the mudcat dredges subject of this litigation.[1] The trial court was not convinced by their testimony as to the existence of defects in the leased machinery. On the other hand, the trial court accepted as credible the contradictory testimony concerning defendant's operation of the dredges from plaintiff's witnesses who at the time of Badger's lease of the dredges were, on the whole, more experienced with the mudcat type dredge. The trial court concluded that no defects were proven in the leased dredges except for certain minor difficulties for which the defendant was credited for the replacement or repair of these parts. This was a reasonable determination of credibility and fact under Canter v. Koehring, 283 So.2d 716, 724 (La.1973). We conclude as did the trial court that defendant failed to carry its burden of proving its affirmative defense by a preponderance of the evidence.
Similarly, with respect to the second issue, there was conflicting testimony as to the nature and extent of repairs made on both the mudcat dredges. The trial court chose to give more weight to plaintiff's witnesses who testified that repairs were required due to the improper operation of both mudcat dredges and to accept as accurate the repair bills introduced into evidence by plaintiff. Thus, under Civil Code 2721 which requires the lessee to pay for losses sustained through its own fault, appellant Badger is liable for repairs made on both mudcat dredges.
For the reasons stated above, we affirm.
AFFIRMED.
NOTES
[1] Subsequent to the lease arrangement, Badger purchased a new mudcat dredge.