COVINGTON, Chief Judge.
On May 6, 1980, Clayton Barrere, James Gauthier, Larry Dauzat and John Cooper were employed by the Department of Corrections at the Louisiana State Penitentiary, and were involved in an altercation with inmate Nolan Larks at Cellblock D. As a result of this incident, Barrere, Gauthier and Cooper were charged with using excessive force to subdue the inmate; Barrere and Cooper were demoted and Gauthier received a twenty day suspension. Dauzat and Gintz[1] were charged with making false statements regarding their presence in the cellblock when the altercation occurred and each received a ten day suspension. These disciplinary actions[2] were appealed and a public hearing was held before a referee appointed by the Commission. The Commission ordered the disciplinary actions taken against Barrere, Cooper, Dauzat and Gauthier reversed, and the Department of Corrections appealed.
While Cooper was on duty May 6, 1980, he entered Pine Dormitory and began a routine shakedown of the resident inmates. Gintz was also on duty in Pine Dormitory. The suspicious behavior of inmate Larks alerted Cooper, who then ordered Larks to empty his pockets. A cigarette which was suspected to contain marijuana was found among Larks’ possessions, and Cooper ordered Larks to gather his possessions for transport to lockdown. Larks argued that Cooper had “bum rapped” him by planting the marijuana, which protest continued as Gintz and Cooper escorted him to Cellblock D.
When these three arrived at the cellblock, Barrere, Gauthier and Sylvester Dunbar were present. Larks continued to complain, refused to cooperate, and in the course of events struck Cooper. The officers used force to subdue Larks, who was under control within a few minutes.
After Larks’ possessions were inventoried, he was taken to the hospital. An examination revealed that Larks had suffered contusions to the left side of the back, contusions and swelling to the left upper and lower eyelid, abrasions under the right eye and on the nose, and pain and tenderness in the back, abdomen, face and head. While x-rays taken at this time were negative, a fractured rib (the 11th rib on the right side) was discovered on an x-ray taken May 23. The fracture was healing at this time and was approximately two weeks old.
Pursuant to Article 10 Section 12 of the Louisiana Constitution of 1974, the decisions of the Civil Service Commission are subject to review of any question of law or fact. The standard of review for decisions on appeal from the Commission is the same standard used in reviewing judgments of district courts. The factual determinations *784 of the Commission will not be set aside unless they are found to be manifestly erroneous. Albert v. Louisiana State Penitentiary, 396 So.2d 340 (La.App. 1st Cir.1981). Finding the decision of the Commission to be contrary to law and evidence, we reverse.
The Commissioner’s findings of fact are contradictory with regard to the credibility of the two independent witnesses, O.A. McKeithen and Frank Robinson. McKeithen testified that both Gintz and Dauzat were at the scene of the altercation, while all of the officers denied that Gintz and Dauzat were present. McKeithen further testified that he saw Gauthier strike Larks after Larks was lying on the floor— no longer struggling or attempting to fight back. Robinson’s testimony also placed Gintz and Dauzat at the scene.
In their finding of fact # 16, the Commission accepted McKeithen’s and Robinson’s testimony, and found that Gintz was at Cellblock D. However, in finding of fact # 17, they rejected MeKeithen’s and Robinson’s placement of Dauzat at the Cellblock at the time of the incident. This apparent contradiction is even more troublesome in view of the fact that the Commission had received as evidence Dauzat’s resignation in which he stated his reason for resigning was to “... avoid disciplinary action for falsifying documents.” We find that this constitutes manifest error and reverse this finding of fact.
The Commission also concluded that the Department of Corrections failed to prove that excessive force was used to subdue Larks. This finding, too, is manifestly erroneous, and we reverse.
Larks’ testimony was rejected by the Commission on the basis of his past history of violence and disciplinary problems. While it is clear that Larks was not a model inmate, a history of violent and disruptive behavior is irrelevant to his capacity for veracity. No evidence was introduced which would suggest that his past was fraught with falsehoods and fabrications. It was error for the Commission to totally disregard Larks’ testimony concerning the force used against him by the officers on this basis.
The Commission also found a lack of corroborating evidence with regard to the use of excessive force. This, too, was error and we find that the medical reports and the testimony of McKeithen corroborate the charge that excessive force was used. The medical evidence clearly shows that Larks was badly beaten during this imbroglio. He received extensive cuts and bruises while not one of the five officers involved complained of any injuries. Additionally, a few weeks after the incident, x-rays revealed a fractured rib which was healing. Between the time of the incident in question and the x-ray, Larks was not involved in any other tussle in which he could have received a broken rib. The Commission found that it was not conclusively proven that Larks’ rib was fractured by the officers; we find that it is more likely than not that the rib was broken by the officers. The burden of proof imposed by the Commission as to this fact was greater than that required by law. In civil matters, the plaintiff must carry his burden of proof by a preponderance of the evidence. Bordlee v. Pat’s Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir.1975). The medical reports meet this burden in proving that Larks’ rib was broken during the altercation with the officers.
The Employee Rules and Procedures, Louisiana Department of Corrections, (Jan. 1, 1980), at page 5, sets forth the meaning of excessive force:
Excessive force is force used beyond that which is reasonable and apparently necessary to prevent an attack, escape, destruction of suspected controlled dangerous substances, commission of any other crime or to subdue a prisoner engaged in any act of violence, self-mutilation, or property destruction. Use of excessive force is absolutely forbidden.
While we find that excessive force was used as evidenced by the number of officers involved and the extent of Larks’ injuries, it is also apparent from the testimony of *785 McKeithen. He saw Gauthier strike Larks while he was prone on the floor, no longer struggling or resisting. The Commission found that this testimony did not demonstrate whether the striking was done with excessive force. However, we find that by striking an inmate who was subdued, Gau-thier used force that was patently unreasonable and unnecessary and, therefore, excessive.
Accordingly, for the above and foregoing reasons, the decision of the State Civil Service Commission is reversed. The decision of the Secretary of Corrections is reinstated, with costs to appellees.
REVERSED AND RENDERED.

. Kenneth Gintz was also employed by the Department of Corrections at Louisiana State Penitentiary on this date, and was involved in the same altercation. The Civil Service Commission denied his appeal on the ground that the Department of Corrections had borne its burden of proof as to the charge that Gintz failed to report his presence in the cellblock during the altercation and his case is not before this Court.

. The actions were taken and the affected employees notified by Honorable C. Paul Phelps, Secretary, Department of Corrections, by letter dated January 30, 1981.