550 So.2d 685 (1989)
Dan WISINGER, d/b/a D.W. Electric Company, Plaintiff-Appellee,
v.
Chris CASTEN, d/b/a Casten's Restaurant, Defendant-Appellant.
No. 20728-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Love, Rigby, Dehan, Love & McDaniel by Joe B. Cordill, Jr., Shreveport, for defendant-appellant.
John W. Evans, Jr., Shreveport, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr., and HIGHTOWER, JJ.
MARVIN, Judge.
In this action brought on an open account, Casten, the defendant-restaurant owner, appeals a judgment in favor of an electrician who performed work at the restaurant after a fire in the kitchen.
Casten complains that the trial court should not have admitted evidence of the amounts paid him by his fire insurer and seeks to reverse or reduce the judgment and the award of attorney fees under LRS 9:2781.
We reduce the judgment and delete the award of attorney fees and affirm the amended judgment.

*686 FACTS
After a fire in the kitchen, Wisinger, at Casten's request, submitted a written proposal "to rewire the cooking unit, replace all necessary components such as [heating] elements, infinite switches, thermostats, flat elements, and asbestos covered wire and wiring to breaker panel. Whatever is necessary to put unit back in working order... [and] to furnish material and laborcomplete in accordance with above specifications, for the sum of ... $1,978.71." The proposal also stated that "any alteration or deviation ... involving extra costs will be executed only upon written orders ..." Casten ordered the work done.
During the course of his work in Casten's kitchen, Wisinger and the insurance adjuster who serviced Casten's fire claim discussed invoices or other writings about the additional cost of parts and labor that Wisinger found was needed to complete the repair. Before Wisinger completed the work, he prepared and submitted directly to the adjuster a revised invoice in the amount of $2,238.71[1] which Wisinger contended was for additional cost that was not included in the contract for $1,978.71. The adjuster, who had not seen Wisinger's $1,978 proposal, verbally approved the $2,238 revised invoice and indicated that the insurance would cover the work, less some depreciation.
Wisinger completed his work and departed after testing the unit and pronouncing it ready for use. After two day's use, two other heating elements burned out. Wisinger, again at Casten's request, examined the unit. Wisinger testified that when he approached Casten about the cost of replacing the burned out elements, Casten told him to talk to the adjuster.
Wisinger then submitted to the insurance adjuster another invoice which simply showed "bid proposal$2,738.71." According to the testimony, this amount included $510 for the parts and labor to install the two heating elements that later burned out. The insurer's adjuster verbally approved the "bid proposal" [of $2,738.71] and Wisinger purchased the replacement parts.
Wisinger thereafter presented Casten with three invoices which totaled $3,115.94. The first of these invoices was the $2,738.71 bid proposal that Wisinger had given to the insurance adjuster which included the $510 for parts and labor to replace the additional elements which burned out. The other two invoices totalled $377.23 for other work not related to the fire which Casten had ordered and which is not in dispute.
When the three invoices were presented to him, Casten objected to the increase and ordered Wisinger off the restaurant premises. Wisinger then returned the parts he had obtained for the additional repair and received credit. Casten later hired and paid another electrician $646.26 to make the additional repair.
Before suing on an "open account," Wisinger made written demand for $3,115.94. Casten contended that Wisinger should be bound by his written proposal to do "whatever is necessary to put the unit back in working order" for $1,978.71 and should owe him damages and the $646.26 Casten paid to another electrician to do what Wisinger was obligated to do. To further confound confusion in the record, Casten then contended that, in any event, Wisinger's action was not an open account, but was contractual and should not be more than the invoice for $2,738.71, which again we note, included the $510 cost of parts and labor that Wisinger did not furnish.
Neither the adjuster nor Wisinger produced a detailed invoice or other writing, or testimony, which would enable us or the trial court to compare specifically what Wisinger did and what he initially proposed to do for $1,978.71. The $510 estimate for purchasing and installing the two elements that later burned out is immaterial to our discussion because Wisinger did not perform this work. Nothing in the record *687 explains the $260 increase from the $1,978 contract and the $2,238 "proposal" Wisinger made to the insurance adjuster.
A written contract is the law between the parties. CC Art. 1983; Williams Engineering, Inc. v. Goodyear, 496 So.2d 1012 (La.1986); Shreveport Gr. Empire Broad. v. Chicoine, 528 So.2d 633 (La.App. 2d Cir.1988). Contracting parties will be held to the full performance of the obligations flowing from their contract. Kean v. Lemaire, 451 So.2d 151 (La.App. 1st Cir.1984). A written construction contract may be modified by oral agreement and by the conduct of the parties, even when the contract provides that change orders must be in writing. Pelican Elec. Contractors v. Neumeyer, 419 So.2d 1 (La. App. 4th Cir.1982), writ denied.
The party who asserts that an obligation has been modified must prove by a preponderance of the evidence facts or acts giving rise to the modification. CC Art. 1831. Oral modifications alleged to be in excess of $500 must be proved by at least one "credible witness" and "other corroborating circumstances," CC Art. 1846; Snedegar v. Noel Estate, Inc., 438 So.2d 677 (La.App. 2d Cir.1983), writ denied. Parol evidence is admissible for this purpose. Great Southern Homes, Inc. v. Holten, 460 So.2d 662 (La.App. 1st Cir.1984), writ denied.
To meet the burden, a party may serve as his own "credible witness" and the "other corroborating circumstances" may be general and need not prove every detail of the plaintiff's case. Bossier Marble v. Kelly's Truck Terminal, 530 So.2d 1198 (La.App. 2d Cir.1988), writ denied. The corroborating circumstances that are required, however, must come from another source. Hilliard v. Yarbrough, 488 So.2d 1038 (La.App. 2nd Cir.1986). Whether there was an oral agreement that modified the written contract for $1,978.71 is a question of fact. Pelican Electrical Contractors, supra. Our review of factual conclusions of a trial court is limited to a review of the entire record to determine if those conclusions are clearly wrong. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
The critical issue is whether the record contains "other corroborating circumstances" that prove by a preponderance of the evidence that Casten, individually or through the insurance adjuster, agreed with Wisinger to modify the original contract to include $260 additional or extra work by Wisinger.
The work contracted for was completed when Wisinger tested the unit and pronounced it ready for use. The two units that burned out later were not a part of this contract. The record does not show or suggest that Wisinger discussed specifically with Casten, before Casten ordered him off the premises, the cost of extra parts and labor Wisinger may have furnished that were not contemplated by the $1,978 contract.
The record supports only the conclusion that when Wisinger returned to investigate the two elements that burned out after he finished his work, Casten told him to talk to the insurance adjuster about the cost of replacing those two elements. Casten denied the amount alleged in the petition and denied that he had any knowledge of the costs in excess of the contract price. Wisinger's only discussion with Casten about the specific cost of repair after the contract work had been performed occurred after Wisinger talked to the insurance adjuster when Wisinger presented Casten with the invoices that totaled $3,115. Casten, as we have noted, then ordered Wisinger off the restaurant premises.

CONCLUSION
Under this record, we cannot find that Wisinger met his burden of proving the initial contract was modified or that Casten agreed to work that Wisinger actually performed on the cooking unit in addition to what Wisinger proposed in writing.
Casten's response to Wisinger's inquiry "to talk" to the insurance adjuster does not suggest implied or apparent authority for the adjuster to modify a completed contract. The insurance adjuster was not an employee or agent of Casten and had no direct contact or concern with Wisinger *688 until after Wisinger began to perform his obligations under the $1,978 contract. The contract (the specific proposal made by Wisinger for $1978 and accepted by Casten) was not modified by an invoice simply containing the words and figures "Bid Proposal$2738.71" that was later "approved" by an insurance adjuster who is not shown to have had authority, express or apparent, to bind Casten.
When asked whether he happened "to represent Chris Casten on an insurance claim," the adjuster answered that he was merely "assigned [by his superiors] to handle [Casten's] fire loss." The adjuster's further testimony reveals that he used the figures submitted to him by Wisinger and compared them with estimates by others to prepare a Statement of Loss on Casten's claim for fire and smoke damage to submit to the insurer. The adjuster's testimony is not sufficient to constitute proof of corroborating circumstances necessary to modify the contract and does not establish the adjuster's authority to approve the additional work and bind Casten. At best, the adjuster's testimony establishes that Wisinger's estimates were used in calculating Casten's loss.
The adjuster was not Casten's express, implied or apparent agent. Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989); cf. Hawthorne v. Kinder Corp., 513 So.2d 509 (La.App. 2d Cir.1987). Wisinger's testimony, "because of his prior dealings with Casten, he wanted to get the word from the adjuster," indicates that Wisinger desired to tell Casten that the adjuster had said the extra cost would be "covered" before telling Casten about the $260 "extras" and the $510 additional work. The fact that the extras would be covered by insurance does not establish Casten's consent to modify the contract. When Wisinger went back to Casten with invoices totaling $3,115, Casten ordered Wisinger off the premises.
Under this record, it is immaterial whether the insurer paid Casten more than $1,978 for the labor and parts furnished by Wisinger. Whether an insurer may be liable for work "approved" by an adjuster is not an issue in this action or this appeal.
Casten effectively acknowledges that he owes Wisinger $1,978.71 for the contract work and $377.23 for work not related to the fire. We shall reduce the trial court's judgment to the sum of these amounts.
For a number of reasons, we delete the award of attorney fees. Even should we assume Wisinger correctly styled his action as one on an open account and that the statutory demand letter was received by Casten, the demand letter did not "correctly set forth the amount owed." LRS 9:2781A. Wisinger admits he did not perform the labor or supply the two burned out elements, the charge of $510 for which he included in the demand letter. Wisinger failed in his burden of showing attorney fees were owed him by Casten. City of Bossier City v. Sims, 486 So.2d 1122 (La. App. 2d Cir.1986).

DECREE
The judgment is amended to delete the award of attorney fees and is reduced to $2,355.94. As amended, the judgment is affirmed at Wisinger's cost.
NOTES
[1] This figure may be reached by adding $260 extra work to the original bid price of $1,978.71, or by deducting from the $2,738.71 "bid price" Wisinger gave the adjuster, the $510 cost of purchasing and installing the additional burned out heating elements.