573 So.2d 1312 (1991)
James Patrick WOODARD, Plaintiff-Appellee,
v.
Mason FELTS, Defendant-Appellant.
No. 22051-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
*1313 Campbell Campbell & Johnson by John T. Campbell, Minden, for defendant-appellant.
Randy D. Elkins, Minden, for plaintiff-appellee.
Before LINDSAY and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
O.E. PRICE, Judge Pro Tem.
Mason Felts, a landowner, appeals a decision of the trial court which found that he breached a contract with Patrick Woodard, a consulting forester, and awarded damages to Woodard. For the reasons hereinafter cited, we amend the judgment of the trial court and, as amended, affirm.
We find the record to show this dispute to rise out of the following summary of events. In August 1988, Mr. Felts, a 75 year old man who had no previous experience in selling timber, decided to investigate the feasibility of selling the merchantable timber on his homeplace in Webster Parish. He testified that he was somewhat familiar with the board foot price timber would bring at this point in time but he thought he should get several different estimates of the quantity of merchantable timber existing on his tract of land. For this purpose, he contacted three parties in the timber industry. The first one contacted was Mike Merritt, a timber buyer, who gave Felts a fixed price he would pay for the timber measuring 12 inches and above in diameter measured at a 4 foot height. The other two persons contacted were Plaintiff, Woodard, and Curtis McDaniel, both professional foresters, who generally do not purchase timber but provide the usual forestry services to landowners.
*1314 Woodard met with Felts on August 16, 1988, at which time they drove around the subject tract and Felts showed Woodard the boundaries. Woodard contends and so testified, that he explained to Felts that the customary method of a forester to assist a landowner in marketing timber is for the forester to recommend whether to clear cut or use selective cutting of trees over a certain diameter, and then for the forester to mark each tree which is to be cut. The forester then calculates the approximate amount of the several types of product which will result from the cutting (poles, saw logs or pulpwood-either pine or hardwood). Woodard contends he further explained that the forester would submit for the owner's approval a letter to be sent to timber purchasers in this area soliciting bids for the timber. Woodard further contends that at the conclusion of their conversation he asked Felts if he wanted him to begin the process of "marking" the trees and that Felts told him to go ahead.
Felts testified that he was under the impression that Woodard was to only "cruise" the tract, as this term is used in the industry, to give him an estimate of how much timber was on his tract and that he did not intend to engage Woodard's services until he received the estimate of quantities from Curtis McDaniel, the other forester which he had contacted for the same purpose.
Felts further testified that he told both Woodard and McDaniel that he was leaving within a day or so for a visit to Missouri and gave both men the phone number at which he could be reached so that each could call and give him their estimates of quantities. He contends he intended to use the services of the one that estimated the largest quantity. Felts admits that he did not tell either forester that he had contacted the other for similar information. He also admits that he knew he would be expected to pay a commission of ten per cent of the total sale price to the forester who he authorized to solicit bids on the timber if a sale was consumated.
As things worked out, Woodard over several weeks proceeded to mark the timber he thought was to be cut with the blue paint which is usually the color used to designate trees to be cut.
McDaniel also marked the timber in a different color apparently shortly after Woodard had completed his marking. McDaniel called Felts in Missouri and gave him his calculation of approximate quantities and Felts being satisfied with the calculations told him to go ahead and solicit bids. A sale resulted from this solicitation bringing a total of $67,236.00. A commission was paid by Felts to McDaniel based on this amount.
Woodard, who failed to call Felts in Missouri after completing his calculation of quantities because he had misplaced the telephone number given him, first learned of McDaniels employment after Felts returned home from Missouri. Woodard informed Felts that he had been engaged to perform all of the usual forestry services in marketing the timber at the initial meeting with Felts and that he was entitled to be paid the full commission which he would have earned had he been permitted to complete the work intended. Attempts at settlement failed and Woodard filed this action seeking damages for an alleged breach of contract.
The trial court found in Woodard's favor, reasoning that although Felts did not comprehend all of the specifics of the agreement outlined by Woodard, there was no doubt that Woodard in good faith thought that Felts understood the specifics and that Felts had agreed to the contract. The court then awarded damages to Woodard, basing the ten percent calculation on Woodard's tally of 292,000 board feet. McDaniel's calculation was 373,016 board feet which was the quantity sold to the bidder whose bid was accepted.
On appeal, Felts contends that Woodard did not sustain his burden of proof by showing the existence of the alleged oral contract by the testimony of one witness and other corroborating circumstances. Woodard contends that he sustained his burden of proof because his testimony is the required testimony of one witness and the other corroborating circumstances were *1315 shown by either the testimony of another forester, Donald R. O'Neal, Jr., or the marks made by Woodard on the trees.

DISCUSSION
Our review is under the manifestly erroneous, clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989).
We agree with the trial court's conclusion that the alleged contract was one for personal services to be rendered by a consulting forester. This conclusion pretermits consideration of whether a writing was required and the admissability of parol evidence. Compare La.Civ.Code Arts. 463, 1832, 1839 & 2440 regarding standing timber and sale of immovables.
However, we do not agree that a contract was proved or existed and any such finding by the trial court is clearly wrong.
First, Woodard did not sustain his burden of proof. The party who asserts an obligation must prove it by a preponderance of the evidence. La.Civ.Code Art. 1831; Bell v. Badger Dredging, Inc., 420 So.2d 1197 (La.App. 5th Cir.1982); Bordlee v. Pat's Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir.1975). La.Civ. Code Art. 1846 provides:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
Although a party may be the "one witness" required by the Article, Woodard produced no proof by way of "corroborating circumstances." Wisinger v. Casten, 550 So.2d 685 (La.App. 2d Cir.1989). The testimony of Donald O'Neal does not qualify because O'Neal could not testify from personal knowledge about the specific dealings between Woodard and Felts. This witness, also a professional forester, merely testified to the usual or customary arrangement between a forester and a landowner in selling timber. LSA-LCE Art. 602. Woodard's reply brief suggests that the marks on the trees about which Woodard testified is sufficient proof by way of corroborating circumstances. However, proof of corroborating circumstances may not be the result of the plaintiff's own actions. See Wisinger, supra. and Hilliard v. Yarbrough, 488 So.2d 1038. (La.App. 2d Cir. 1986). Cf. Strickland v. Marathon Oil Company, 446 F.Supp. 638 (E.D.La.1978), wherein plaintiff's counsel's testimony regarding terms of settlement agreement was found to be insufficient as corroborating circumstances.
Secondly, we do not find there was any "meeting of the minds." Both parties are honest and each convinced that he is right. They vie in this lawsuit with clean hands. The actions of each party subsequent to the first meeting are entirely consistent with each party's perception of the agreement between them, but totally inconsistent with a completed contract.
Consent of the parties is necessary to form a contract. LSA-C.C. Art. 1927; Liberty Personnel, Inc. v. Children's Hospital, 487 So.2d 518 (La.App. 4th Cir.1986). Error may vitiate consent. [E]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Art. 1949. Cause is the reason why a party obligates himself. LSA-C.C. Art. 1967. Error concerns cause "when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of the thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation." LSA-C.C. Art. 1950.
In this situation Woodard thought that he had been employed to carry out the complete cycle of functions of a professional forester in marketing a tract of timber by the selective cutting of trees of over 12" in diameter at a four foot height, including the marking of trees to be cut, estimation *1316 of quantities to be recovered from the cutting, solicitation of bids from prospective purchasers and overseeing the logging operations if a sale was effected.
Felts, on the other hand, thought that the proper way to get the best price for his timber was to have at least three different people who were engaged in the timber business give him an estimate of how much merchantable timber was on his tract of land and to do business with the one with the largest estimate. He apparently did not understand the impropriety of contacting two professional foresters for this purpose without disclosing to each that he was seeking the same information from the other.
There was no meeting of the minds regarding the marketing of the timber. The commission was the cause of Woodard making the contract. He would not have agreed to perform if he had known that he would not receive the commission. The cause of Felts making the contract was to determine how much timber he had on his tract that was merchantable. Felts would not have agreed to give the marketing contract to Woodard because Woodard had at that time no reliable estimate of the number of board feet available or the ultimate sales price and Felts had not yet spoken to the other foresters. In other words, there was an error as to the cause of the contract which vitiated consent. LSA-C.C. Arts. 1949 and 1950. When both parties are in error, the recission of the contract is appropriate. LSA-C.C. Art. 1949, comment (d); Lyons Milling Co. v. Cusimano, 161 La. 198, 108 So. 414 (1926).
We have considered allowing recovery of some amount under quantum meruit but do not find it applicable here because an essential element, benefit to Felts, is not present. Woodard's work benefitted no one. Any work done by him was also done by Merritt, the consulting forester who received the contract. Thus, recovery by the plaintiff under a contract theory is foreclosed.
However, all recovery by Woodard is not entirely foreclosed as partial recompense for work performed may be allowed under the doctrine of detrimental reliance. See LSA-C.C. Art. 1967; Kethley v. Draughon Business College, 535 So.2d 502 (La.App. 2d Cir.1988). Even though he may not have understood the significance of what he said, Felts testified that he agreed for Woodard to "mark" the trees. Implicit in Felts' authorization to mark was Woodard's reasonable expectation that he would be paid for his work. Further, the authorization to mark could reasonably be understood by Woodard as meaning that Felts had agreed to award the entire contract to Woodard in accordance with the terms outlined by him to Felts.
The court may grant either specific performance or damages. The timber has already been cut and sold so that damages in the only appropriate remedy available to the disappointed promisee. Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. LSA C.C. Art. 1995. However, the court need not award both of these elements of damages, but may limit recovery to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. LSA-C.C. Art. 1967; comment (e).
Although Woodard testified that he completed "ninety percent" of the work envisioned under the contract by marking the trees, we find the record reflects that the solicitation and supervision of the bid process together with supervision of the cutting of the timber remained to be performed. We determine that three thousand dollars should adequately compensate the plaintiff.
Accordingly, the judgment appealed is amended to reflect that Woodard's recovery is three thousand dollars, and as amended, is affirmed at appellant's cost.
AMENDED, AND AS AMENDED, AFFIRMED.