FOURNET, Justice.
 

 Plaintiff, alleging that the defendants Warren G. Gray, and W. M. Redditt were indebted to it in the sum of $5,247.05 for oil well equipment and supplies furnished them for the drilling of an oil and gas well on property under lease to them and located in Shelby County, Texas, known as the “Pickering lease,” and that the defendants John G. Pundt and Victor S. Johnson, non-residents, having agreed to pay and assumed the payment of the said indebtedness, as evidenced by a contract and contemporaneous agreement dated July 21, 1938, and a supplemental agreement dated November 7, 1938, entered into between them and the defendants Gray and Redditt, are, together with their co-defendants, individually and in solido, liable to plaintiff for the payment of this indebtedness, obtained a writ of attachment against Pundt and Johnson, making certain alleged creditors of the said non-resident defendants parties garnishee.
 

 The defendant John G. Pundt was personally served within the jurisdiction of the court and he filed exceptions of no cause and no right of action, and also a motion to dissolve the writ of attachment. The curator ad hoc appointed to represent the defendant Victor S. Johnson filed an exception to the citation, coupled with a motion to dissolve, and also a separate motion to dissolve the writ of attachment. The trial judge considered the issues presented by the two non-resident defendants separately and rendered judgments against the plaintiff (1) in favor of the defendant Johnson, dissolving the writ of attachment and fixing the fee of the curator appointed to represent him at $25, which was taxed as costs, and (2) in favor of the defendant Pundt, sustaining the exceptions of no cause and no right of action, dismissing plaintiff’s suit as to him, dissolving the writ of attachment, and assessing the sum of $75 attorney fees as damages. Plaintiff has appealed.
 

 The basis of the judgments appealed from is that plaintiff’s petition fails to disclose a cause or a right of action as to the defendants Pundt and Johnson in that the document relied upon to show their assumption of and agreement to pay the
 
 *992
 
 debt of their co-defendants Gray and Redditt to the plaintiff did not have the effect of binding them to pay said obligations.
 

 The facts of the case, as disclosed by the record and which are necessary for the proper disposition of the issues involved, are as follows:
 

 On July 21, 1938, Warren G. Gray entered into a contract whereby he agreed to transfer and assign to John G. Pundt a certain leasehold acquired by him from the trustees of the estate of the Pickering Lumber Company, covering approximately 5,880 acres of land located in Shelby County, Texas (less 1,720 acres thereof which he had previously assigned to other parties), free of encumbrances, the consideration being (1) $2,500 in cash, (2) $5,000 on or before ten days thereafter, and (3) $57,000 to be paid when the titles to the property were approved by Pundt’s attorneys and the proper assignments made of the property. On the same day the contract was entered into, the parties thereto supplemented it by a letter written by Pundt and accepted by Gray wherein it was stipulated that Pundt • would, at his own expense, deepen the well then being drilled on the property, known as the Pickering A-l, to a depth of 4,100 feet, provided it failed to produce oil when the depth of 2,945 feet had been reached. The contract further provided that in the event Pundt did not accept the assignment because' of objections to the title, the cash paid by him under the ’terms of the contract, and ’ also the amount expended by him in the deepening of the well, would be refunded to him by Gray out of half of the oil, gas, and distillate produced and saved from the leasehold. Subsequently, on November 7, 1938, the contract was again supplemented by a proposal written in letter form by Gray and Redditt and accepted by Pundt. It is this supplemental contract that forms the basis of the present action against Pundt and Johnson.
 

 There is no indication in any of the transactions that the defendant Johnson is a party thereto, but, in an amended petition, it is alleged that Pundt was not only acting for himself individually, but also as the agent of Johnson.
 

 The instrument of November 7, 1938, after referring to the original contract and contemporaneous agreement of July 21, 1938, is separated into four parts or divisions, which are numbered. ’ In the first it is stated that Redditt is interested with Gray in the ownership and operation of the leases and that he ratifies the contract of July 21, 1938, between Gray and Pundt. In the second the payment in cash to date, of the sum of $8,300, which amount is to be credited to the purchase price- of the leasehold interest under the terms of the original contract, is acknowledged. In the third it is recited that Pundt had not complied with his obligation to drill the Pickering A-l well to 4,100 feet but that inasmuch as he, in order to protect the original oil and gas lease, had moved in on another portion of the property and had commenced to drill and was drilling thereon another well, this new operation would be substituted and accepted in lieu of the
 
 *994
 
 former obligation by Gray and Redditt. In the fourth it is stipulated:
 

 “In consideration of the foregoing, we do hereby agree that you can have until on or before six months from this date to pay what balance or purchase money may be due as under said contract of purchase and sale, provided titles have by that time been accepted by your attorney and provided further, you will, on or before ten days from this date, pay the Globe Supply Company his claim of $643.48 as reflected in Vol. 3, page 28 of the Records of Laborer’s Liens of Shelby County, Texas, and the Earl H. Carter claim of $385.-00 as reflected in Vol. 3, page 27 of said records, together with the other bills we owe against our former operations on said lease, said bills have already been given you with affidavits as to their being correct, the aggregate amount of which claims are to be credited to the purchase price for said lease regardless of the amounts actually paid therefor in settlement, and the payment of such claims shall in no wise be construed as having by you accepted title to said original leasehold, and should title not be accepted as provided in said original contract of purchase and sale, then the amounts paid by you shall be refunded out of one-half of all the oil, gas, distillate ‘and other minerals from said lease hold premises, in the same manner and under the same circumstances as the other advances and payments are to be refunded me, as provided in said contract of purchase and sale and said letter of contemporaneous agreement.
 

 “Your signature of acceptance hereto will constitute á contract between us, and the same shall become a part of our former contracts above mentioned. Except as hereinabove provided, our former contract' of purchase and sale and the contemporaneous letter agreement remains in full force and effect, and except as herein changed, said covenants remain as in said contract of purchase and sale and said contemporaneous contract provided.”
 

 It is the plaintiff’s contention that by accepting the proposal of November 7, 1938, Pundt agreed to pay and did assume the payment of all of the debts due by Redditt and Gray on the Pickering well, which included the debt of Redditt and Gray to plaintiff.
 

 On the other hand, it is defendants’ contention that Redditt and Gray, by this supplemental contract, agreed to grant Pundt an extension of six months within which to pay the amount of the purchase price still due $57,000, only in the event Pundt complied with two conditions, i. e., accepted the title to the property within six months, and paid the debts of Redditt and Gray within ten days. In this contention the defendants were sustained by the lower court.
 

 Under the express provisions of the Revised Civil Code, in construing and interpreting contracts, the “ * * *
 
 courts are bound to give legal effect to all such contracts according to the true intent of all the parties
 
 * * ” and this “ * * * intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.” Arti
 
 *996
 
 ele 1945. “The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to'grammatical rules, as to general and popular use.” Article 1946. “When there is anything doubtful in agreements', we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.” Article 1950. “All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.” Article 1955. See, also, Union Tank Car Co. v. Louisiana Oil Ref. Corp., 184 La. 121, 165 So. 638; Vincent v. Bullock, 192 La. 1, 187 So. 35, and the cases therein cited. (Italics ours.)
 

 The question that arises, therefore, is, what was the intention of the parties in confecting the supplemental agreement of November 7, 1938? -In other words, what motivated Gray and Redditt in making the proposal and what motivated Pundt in accepting the same ?
 

 A reference to the original contract entered into on July 21, 1938, shows that Pundt’s attorney was to have a reasonable time within which to examine and approve the abstracts of title to the property or deliver to Gray a written opinion setting forth the defects in the title, and that Gray was, in the latter case, to have a reasonable time within which to cure these defects. It was further provided that if Gray was unable to cure the title within a reasonable time, then Pundt, at his option, could accept the title in its then condition and pay the balance due on the purchase price, $57,-000; could undertake to cure same, for which purpose he should have a reasonable time; or could refuse the assignment of the lease and thus terminate the contract.
 

 Although three and a half months had elapsed from the date of the execution of the original contract to the date the supplemental agreement of November 7, 1938, was executed, Pundt had not accepted the title to the property, but he had paid $8,300 of the contract price to Gray and Redditt and was. still expending large sums of money in the development of the lease. From a reading of the supplemental agreement, it is obvious that Pundt was desirous of having extended the time within which to accept the title and pay the consideration for the leasehold, and it is equally obvious that Gray and Redditt were anxious to have their past due and outstanding obligations affecting this leasehold paid.
 

 We think a careful study of all three documents and a close analysis of the supplemental agreement .shows that Gray and Redditt, by their letter to Pundt, proposed to extend the time within which Pundt could accept the title to and pay the balance of the purchase price of the leasehold for a period of six months if he would agree to pay, within ten days, their outstanding obligations due in connection with their operations on the lease sold to him. The concluding paragraph of the' proposal strongly indicates this was the intention, for it says
 
 “Your signature of acceptance hereto will constitute a contract between us,
 
 and the same shall become a part of our former contract above mentioned * * *, ” and, in our opinion, when Pundt did sign the agreement, he accepted the proposal,
 
 *998
 
 completed the contract, and his obligation to pay the claims referred to in the proposal within ten days was perfected. (Italics ours.)
 

 It is also contended by the defendants that plaintiff’s petition discloses no cause and no right of action as to them for the reason that “ * * * plaintiff is not named in the agreements and parol evidence cannot be received to show any promise on his part to pay the debt of a third person.”
 

 There is no merit to this contention for the agreement by Pundt to pay the indebtedness Redditt and Gray incurred in their operations on the lease is incorporated in the instrument executed November 7, 1938, annexed to and made a part of the petition, and this agreement, coupled with the further allegations in plaintiff’s petition that Pundt was acting not only for himself individually but also as agent for Johnson, and that the amount being sued for is one of the claims covered by this contract, in our opinion, states a right and a cause of action against the defendants. Revised Civil Code, Articles 1890 and 1902.
 

 For the reasons assigned, the judgments of the lower court against the plaintiff and in favor of the defendants Victor S. Johnson and John G. Pundt are annulled and set aside and the case is remanded to the lower court for further consideration consistent with the views herein expressed. All costs of this appeal are to be paid by the appellees, all other costs to await the final outcome of this suit.
 

 LAND, J., absent.