613 So.2d 659 (1993)
Charles Robert McKEE, IV, Plaintiff-Appellee,
v.
SOUTHFIELD SCHOOL and the Board of Trustees of Southfield School, Defendants-Appellants.
No. 24336-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Wiener, Weiss, Madison & Howell by James R. Madison, Shreveport, for defendants-appellants.
M.R. "Rick" Fayard, Jr., Bossier City, for plaintiff-appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
Defendant, Southfield School, appeals the trial court's order issuing a preliminary injunction requiring the school to deliver to Plaintiff, Charles Robert McKee IV, an official transcript of his academic record.
At the time of trial, McKee was an 18-year-old high school junior at Trinity Heights Christian Academy ("Trinity") in Shreveport. Prior to his enrolling at Trinity, McKee had attended Southfield School ("Southfield") since 1987. Southfield is a private school, and McKee's attendance there was established by annual contracts executed between Southfield and McKee's father, Charles Robert McKee III. The plaintiff was not a party to these contracts.
In June 1990, the summer before McKee's sophomore year at Southfield, Jeff Stokes became the new headmaster for the school. Shortly after arriving at Southfield, Stokes discovered that McKee's tuition account was $5,000.00 delinquent, *660 dating back several years. No payments at all were made during the preceding school year, 1989-90.
In August 1990, Stokes met with McKee's father to make arrangements to bring the account up to date. At that meeting, Stokes agreed to allow McKee to continue in school provided his father begin making monthly payments of $600.00, starting in September 1990. When the school failed to receive payment, Stokes sent McKee's father a letter dated October 3, 1990 advising him that he was behind on the account. A second letter dated October 8, 1990 was sent by Stokes to McKee's father, advising him that "unless a payment of at least $1,200.00 is received by the end of October, the school will no longer enroll your son." (Southfield ex. # 1). Although McKee's father denies ever receiving this letter,[1] the school's records show receipt of a $1,200.00 payment on October 31, 1990. (Southfield ex. #4). No payments were made in November, December, or January.
In February 1991, Southfield's business manager sent a third letter to McKee's father requesting payment of $1,800.00 by the end of the month. In response to this letter, McKee's father made two $600.00 payments in February. No further payments were made. Nevertheless, McKee was permitted to complete the school year at Southfield because, as Stokes stated at trial, the Southfield Board of Trustees' policy, obviously unwritten, was to allow students with delinquent accounts to remain enrolled but to withhold all records. (R.p. 76). At the end of the school year, McKee's tuition account was more than $8,000.00 delinquent.
Whether Southfield would have prevented McKee from returning for his junior year, as Stokes testified, is not known because the Southfield Board of Trustees decided to close Southfield's upper school at the end of the 1990-91 school year. (R.p. 78). As a result of the upper school's closure, in August 1991 McKee enrolled for his junior year at Trinity, another private school. As a prerequisite to enrollment, Trinity required a transcript from McKee's previous school. When McKee's father requested a transcript from Southfield, he was informed that a transcript would not be released until the outstanding debt was satisfied.
Even without the transcript, McKee was allowed to attend Trinity because Trinity's principal, James Corley, believed "the kid need[ed] to be in school somewhere." (R.p. 42). However, Corley stated that the school would not be able to issue a diploma to McKee without the transcript unless he repeated the two years of courses he has already taken at the Southfield upper school. (R.p. 36). In the absence of a transcript, repetition of the courses would be the only way the school could be certain that state requirements had been met. According to Corley, a public school would have the same requirements. (R.p. 37).
As a further result of his inability to produce a transcript, McKee was not allowed to play basketball for Trinity due to the eight-semester rule. This rule prohibits a student from competing in high school sports beyond his eighth semester of high school. Since McKee could not produce a transcript, he could not prove that he had been in high school for fewer than eight semesters. Thus, McKee was not permitted to play even though he had been a starter for Southfield's team in both his freshman a sophomore years.
On January 29, 1992, after several failed attempts by McKee's father to settle the debt owed to Southfield and have the transcript released, McKee filed a Petition for Damages and Equitable Remedies against Southfield School and its Board of Trustees.[2] In his petition, McKee prayed for a temporary restraining order, preliminary and permanent injunctions, and damages for the interference in his participation in high school athletics. Judge C.J. Bolin, Jr. *661 denied the temporary restraining order but on February 20, 1992 signed an order issuing a preliminary mandatory injunction requiring Southfield to deliver one official transcript to McKee. The trial court found that Southfield, by its actions and agreement to continue educating McKee, indicated that it would forego the harsh remedy of withholding the transcript. In essence, the court held that Southfield was estopped from withholding the transcript. Southfield filed a suspensive appeal. McKee did not file a response.

THE CONTRACT
At trial, McKee introduced the Contract for Enrollment executed between his father and Southfield School. (Plaintiff's ex. # 1). While this contract only applied to the 1989-90 school year, McKee's father testified to the best of his memory, and Southfield did not dispute, that each of the annual contracts were of the same form. (R.p. 61). We note from the outset that McKee, while not a party to the contract, is an intended beneficiary of the agreement and is, therefore, entitled to a direct action against Southfield. La.C.C. art. 1978; Dartez v. Dixon, 502 So.2d 1063 (La.1987); Litton v. Ford Motor Co., 554 So.2d 99 (La.App.2d Cir.1989), writ denied 559 So.2d 1353 (1990). See also Bossier Parish School Board v. Lemon, 370 F.2d 847 (5th Cir.), cert. denied 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967) (holding children of Barksdale Air Force Base personnel to be third party beneficiaries of an agreement to educate executed by the United States and Bossier Parish school system).
The pertinent parts of the contract provide as follows:
Subject to the following provisions, I enroll my child in Southfield School for the 1989-1990 school year in the Ninth grade.
. . . .
I understand that ... this contract covers the enrollment of my child in the school for the entire school year.
UPON ACCEPTANCE OF THIS CONTRACT BY THE SCHOOL THE PARENT SHALL BE OBLIGATED FOR THE FULL TUITION FOR THE YEAR IN THE AMOUNT OF $2,750.00.
. . . .
I understand that the school reserves the right to ask for the withdrawal of a child at any time.
The contract is silent with regard to the academic transcript. It states neither that the school is obligated to provide a transcript nor that it is free from that obligation in the event that tuition is not paid. However, not all obligations arising out of contract need be explicitly stated. National Safe Corp. v. Benedict and Myrick, Inc., 371 So.2d 792 (La.1979). When interpreting a contract, the court must look to the common intent of the parties. La.C.C. art. 2045. Article 2045 of the Civil Code further provides that:
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
In the context of the instant contract, we find that the parties intended not only that Southfield furnish McKee with an education in return for money, but also that it furnish documentation of that education. While it is conceivable that one might contract to be formally educated merely for education's sake, in this modern era, it is far more likely that one entering into such a contract intends the education to be a springboard into the job market or into higher education. Neither of these goals would be a likely result of formal education absent the ability to prove, via documentation, that one had indeed been educated. Certainly, McKee's father intended that Southfield furnish his son with documentation sufficient to show the world that he had indeed completed a course of study at Southfield. Similarly, Southfield surely contemplated the necessity of furnishing to McKee and its other students written proof of their academic accomplishments. Thus, under the agreement Southfield was obligated *662 to provide McKee with an education and written verification of that education; McKee's father, in turn, was obligated to pay tuition to Southfield.
However, McKee's father, by his own admission, failed to perform his obligation under the contract, as written, or under the subsequent agreement to pay back arrearages and keep tuition current. He fell behind on the monthly tuition payments and eventually stopped making payments altogether, acquiring a delinquency of over $8,000.00. Under these circumstances, McKee's father, as a party to the contract, would be in no position to demand further performance from Southfield. See La.C.C. art. 2013. As a third party beneficiary, McKee's rights under the contract are subject to the terms and conditions of the contract entered into by his father and Southfield. Pelican Well & Tool Supply Co. v. Johnson, 194 La. 987, 195 So. 514 (1940); A.F. Blair Co. v. Haydel, 504 So.2d 1044 (La.App. 1st Cir.1987). Thus, McKee is in no better position than would be his father to demand that Southfield further perform under the contract. See La.C.C. art. 1982.

DETRIMENTAL RELIANCE
Although McKee cannot demand performance under the contract, he may do so on the basis of detrimental reliance. In this regard, article 1967 of the Civil Code provides, in pertinent part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.
Under this article, the court may grant either specific performance or damages. C.C. art. 1967, comment (e); Woodard v. Felts, 573 So.2d 1312 (La.App. 2d Cir.1991).
In A.F. Blair, supra, the court held that a third party beneficiary may bring an action based on detrimental reliance against a principal party to a third party beneficiary contract. In that case, a bank entered into an agreement with a doctor whereby the bank would provide financing for the construction of the doctor's field house. Prior to construction, the bank furnished the construction company with a letter indicating that the bank had approved a loan sufficient to satisfy the construction contract between the doctor and the construction company. However, when the completion cost turned out to be more than originally expected, the bank refused to tender the difference. Although the court found the construction company to be a third party beneficiary of the financing agreement, it held that the company was not entitled to recovery in contract because the bank had fully performed under the contract. Nevertheless, the court remanded the case, stating that the construction company had alleged facts sufficient to state a claim in detrimental reliance.
This court, in Kethley v. Draughon Business College, Inc., 535 So.2d 502 (La. App. 2d Cir.1988), held that a business college instructor was entitled to recovery from the college on the basis of detrimental reliance. The instructor contracted with the college to teach one paralegal course during the fall quarter in return for a $200 per month payment. Some time later, the instructor agreed to teach two paralegal courses during the winter quarter. Although the parties had not discussed compensation for the winter quarter, the instructor assumed he would be paid $400 per month. The college maintained that it intended to pay the instructor only $200 per month since the second course was taught in a combined format.
This court held that the instructor could not recover in contract because there had been no meeting of the minds. However, we permitted recovery under the theory of detrimental reliance. When the college agreed to employ the plaintiff to teach two courses, it implicitly promised that it would pay plaintiff more than he received for teaching one course. The plaintiff's reliance on this implied promise was reasonable, and he was therefore awarded damages. See also Woodard, supra; Morris v. People's Bank & Trust Co., 580 So.2d 1029 (La.App. 3d Cir.), writs denied 588 So.2d 101, 102 (1991).
*663 In the instant case, Southfield was well aware of the considerable delinquency on McKee's tuition account. Nevertheless, Stokes agreed to allow McKee to continue pursuing his education at Southfield provided his father met the revised payment schedule. The record clearly indicates that, when McKee's father failed to abide by the revised payment schedule, the school contacted him on several occasions in an attempt to collect the sum he owed. Indeed, in a letter to McKee's father, Stokes suggested that the school might ask for McKee's withdrawal; however, Southfield never did so. Rather, it permitted McKee to attend until the end of the 1990-91 school year.
When Southfield permitted McKee to continue his education, notwithstanding his father's clear failure to perform under the contract as written or as revised, it implicitly promised McKee's father that it would grant credit to McKee for the academic work he successfully completed. As the beneficiary of this promise, McKee relied upon it and continued to attend Southfield, performing the coursework required of him by Southfield teachers.
Indeed, by permitting McKee to continue as a student, Southfield implicitly promised to McKee, himself, that he would receive credit toward his high school diploma if he successfully met academic requirements. Also implicit in Southfield's continued performance was that it would supply documentation of McKee's academic accomplishments. McKee was certainly reasonable in expecting this performance as the school never indicated that it might withhold his academic transcript. See Woodard, supra; Kethley, supra.
McKee's reliance on Southfield's continued enrollment would undoubtedly have a detrimental effect upon him were Southfield now permitted to withhold documentation of his education at Southfield. Absent proof of his academic credits in the form of a transcript, McKee would be forced to repeat two years of high school before he could receive a diploma. It would be grossly unfair to allow a student to be lulled into thinking he would receive credit upon satisfactory completion of his coursework, and then to refuse him any evidence of ever having completed the coursework. Under these circumstances, we agree with the trial court's result and find that McKee is entitled to a transcript evidencing his academic accomplishments at Southfield.
Finally, we note that the out-of-state jurisprudence cited by Southfield is inapplicable to the instant case. Of the cases cited, only one, Fayman v. Trustees of Burlington College, 103 N.J.Super. 476, 247 A.2d 688 (N.J.Ch.1968), has an analogous fact pattern. Yet, even Fayman is clearly inapposite; there, the contracting parents, not the student, sought to compel the issuance of a transcript notwithstanding their breach of the enrollment contract.
In conclusion, the trial court judgment issuing a mandatory preliminary injunction requiring Southfield School to issue a transcript to McKee is affirmed. Costs are assessed to Southfield School.
AFFIRMED.
VICTORY, Judge, dissenting.
I agree with the part of the majority opinion that holds plaintiff cannot recover in contract.
However, in my view, Southfield's decision to not disenroll plaintiff in February 1991 cannot be construed to imply it would certify his work in a transcript without the bill being satisfied. If Southfield's actions amount to an implied promise at all, at best, they merely imply plaintiff would not be disenrolled during the semester once it had begun.
Assuming, arguendo, that detrimental reliance can be applicable to a situation where the third party beneficiary is the child of the party breaching a contract, the plaintiff failed to prove (1) he relied on Southfield's actions to his detriment, and (2) he was reasonable in so relying. Indeed, he did not even attempt to prove detrimental reliance, which was not raised by the parties in the trial court or this court.
The detriment mentioned in the majority's opinion comes not from reliance on *664 Southfield's "implied promise," but from its legal right to withhold the transcript. As the majority seems to acknowledge, if Southfield had chosen to disenroll plaintiff for breach of contract when the spring semester began, it would not have been obligated to furnish him a transcript. Plaintiff took no action relying on the school's forbearance that worked to his detriment. In fact, he stayed in the school and finished the year, which was very much to his advantage.
If Southfield had disenrolled plaintiff when his father stopped paying in February 1991, he would now have no transcript and would not have completed the school year ending in May 1991. Plaintiff has not even attempted to show he could have enrolled in another school in mid-February 1991 without a certified transcript from Southfield. Because Southfield allowed plaintiff to continue in school, he has actually completed the school year, although he has no transcript. Upon payment of the outstanding bill, plaintiff will receive a transcript showing he finished the school year and received the appropriate credits for courses completed. Rather than relying on the school's actions to his detriment, the plaintiff is in a much better position having completed the full year and earned credits in the classes that he attended at Southfield, even if at this time he is unable to obtain a certified transcript due to the failure to pay the outstanding bill.
Plaintiff's father acknowledged that he owed the money to Southfield and took part in discussions in early fall 1990 with Mr. Stokes, the headmaster, in an effort to reduce his debt of over $5,000 through monthly payments of $600. Plaintiff testified that he was aware of his father's financial problems and the problems with paying the school. The plaintiff never testified that he thought, or was misled into believing, that the school would furnish him a transcript just because it allowed him to finish the semester. The plaintiff would be unreasonable to rely on the school not only to continue to educate him without being paid, but to also certify his grades when they had no obligation under the contract to do so unless they were paid.
In my view, this is a simple contract case in which the majority has erroneously applied the doctrine of detrimental reliance to force the non-breaching party, Southfield, to fully perform under the contract after repeated breaches of the contract by plaintiff's father, in whose shoes he stands under the contract.
Because of this decision, schools, out of fear that they will lose the right to withhold transcripts, will be more inclined to disenroll students immediately when they fall behind on their debts to the school, a result that hurts the students and the schools.
For these reasons, I respectfully dissent.
NOTES
[1] Each of the three letters discussed herein was addressed to 35 Madonna Street. The McKees' correct address is 34 Madonna Street.
[2] The Southfield Board of Trustees was never served with citation or a copy of the petition. Consequently, the trial court's judgment was issued against Southfield School only.