GERBER, J.
A private school appeals from the circuit court’s -order granting the parents’ motion for temporary injunction. The order requires the school to release to the parents the transcripts for their high school age children. The school had withheld the transcripts because the parents allegedly breached their contract to pay the chil *1078 dren’s tuition after withdrawing the children from the school, and the contract provided that all obligations must be paid in full before any transcripts can be released. Despite the contract’s plain language, the parents moved for a temporary injunction to obtain their children’s transcripts because the children needed the transcripts for future education. The circuit court granted the temporary injunction, presumably because as a result of the dispute between the school and the parents over money, the children became innocent victims. However, we are required to conclude the circuit court erred in granting the temporary injunction. Based on the contract’s plain language, the parents failed to establish a substantial likelihood of success of being entitled to obtain their children’s transcripts without first paying their obligation to the school. We cannot rewrite the contract. Thus, we reverse.
We present this opinion in five parts:
1. the school’s complaint;
2. the parents’ counterclaim and motion for temporary injunction;
3. the school’s response to the parents’ motion;
4. the court’s order granting the parents’ motion in part; and
5. this appeal and our conclusions.
1. The School’s Complaint
The school initiated this case by suing the father for breach of contract and the parents jointly for account stated. The school’s complaint alleged as follows.
In January 2014, the father executed a contract to enroll the parents’ two children for the 2014-2015 School Year. The contract provided, in pertinent part:
19. I/We understand and agree that my/our child is being enrolled for the entire 2014-2015 school year. I/We also agree that it is impossible for the School to determine at the time of our execution of this Agreement the damage and loss that the School would incur from the late cancellation or expulsion/withdrawal of one or more of the students enrolled under this Agreement. Therefore, I/we agree that once this Re-Enrollment Contract has been signed and the registration fee paid, I/we become liable for the entire year’s tuition and fees as liquidated damages unless I/we cancel this contract in accordance with the strict cancellation procedures, as follows:
(a) If enrolled by May 20, 2014, my/ our WRITTEN cancellation notice must be received by the Business Office by May 30, 2014;
(b) If enrolled after May 20, 2014, my/our WRITTEN cancellation notice must be received in the Business Office by the EARLIER of ten (10) days after payment of the registration fee(s) OR the first scheduled day of school pursuant to the official school calendar, whichever occurs first.
Time is of the essence as to all deadlines stated in this Re-Enrollment Contract. ... After the above cancellation dates, there will be no refund, reduction, or transfer of fees or tuition. I/We understand that my/our child(ren)’s voluntary ... absence from School for any reason, including ... withdrawal ..., will not affect my/our financial responsibility. In the event of withdrawal ..., the entire remaining balance due under this contract remains due and payable and shall, at the sole discretion of the School, become immediately due and payable-School records and transcripts will not be released for any of the students enrolled under this Contract until the account *1079 is paid in full for all students enrolled under this Contract.
BG □ Parent/Guardian Initials. I/We have read and will abide by the payment and cancellation policies in paragraph 19.
* Both parents must sign (unless the School, in its discretion,
permits enrollment with one parent’s signature)
s/Breno Gomes_ 01/14/2013[1]
Signature of Father (or legal guardian) Date
_ 01/14/2013
Signature of Mother (or legal guardian) Date
(emphasis in original).
The father did not cancel the contract in writing before the occurrence of the cancellation dates stated in the contract. The parents later withdrew their children from the school just before the 2014-2015 school year began. The school was unable to fill the children’s spots. The school sent a statement of the remaining balance to the parents. The parents did not pay.
Therefore, according to the school, the father breached the contract and was indebted to the school for the remaining balance under the contract. In the alternative, the parents jointly were indebted for the remaining balance under an account stated theory.
2. The Parents’ Counterclaim and Motion for Temporary Injunction
The parents’ counterclaim sought a mandatory injunction requiring the school to immediately release their children’s transcripts to them or to any educational institutions which they designated. The counterclaim alleged as follows, in pertinent part:
Prior to the 2014-2015 school year, [the parents’] children attended [the school]. Prior to the commencement of the 2014-2015 school year, [the parents] determined that they would not re-enroll their children within the school for the coming year. Accordingly, [the parents] intentionally abstained from entering into a fully and finally binding contract with [the school]. Specifically, although [the father] executed an agreement for enrollment at the school for the 2014-2015 school year, he was aware that the contract would not be binding until it was executed by [the mother], as is set forth specifically within the agreement itself, and as had been the practice between the parties in preceding years.
Indeed, immediately on top of [the father’s] signature are the words “both parents must sign (unless the school, in its discretion, permits enrollment with one parent’s signature).”....
Prior to any execution by [the mother] of the contract, and prior to the school providing any agreement or notice that the contract would become effective or fully executed without [the mother’s signature], [the school] elected to not fully execute and complete the enrollment process and to not send their children to the ... school during the upcoming school year.
*1080 Accordingly, [the school] was put on notice that [the parents] would not be fully executing the agreement, and would not be sending their children to the school for that year.
Notwithstanding that by the terms of the [school’s] own eontract[,] it is clear that the 2014-2015 contract was never executed, the [school] nevertheless persisted to send invoices for debt which was non-existent, in relation to an agreement which was never fully executed. Worse, [the school] has elected to punish [the parents’] minor children by withholding their school transcript[s] and therefore stunting and harming their academic progress, all in furtherance of pursuing a non-existent debt....
[[Image here]]
Irreparable harm has been and continues to. be suffered as a result of the failure of [the school] to tender school transcripts to [the parents], inasmuch as [the parents’] children are able to enroll in other secondary schools only on a probationary or temporary basis pending receipt of their school transcripts, and will be unable (or unable without significant difficulties) to apply for college and other further educational opportunities without possession of these transcripts,
No amount of money will fully cure and remedy the damage being sustained by [the parents’] minor children as a result of their inability to access their own academic records and school transcripts.
[The parents] ha[ve] a substantial likelihood of success on the merits because [the school] has no legal or equitable basis whatsoever to withhold these transcripts, which are the property of [the parents] and their children. [The parents] paid for every school year as to which these transcripts apply, and never agreed within any executed and effective document to send them children to [the school] during the 2014-2015. year.
A temporary injunction- will serve the public interest insomuch as the public has a clear and present interest in the education of minor children, and in the university education of children and young adults within the State of Florida.... [The school] seeks to hold the education of these children hostage for payment of a non-existent debt....
(paragraph numbers omitted).
The parents’ motion for temporary injunction essentially repeated the counterclaim’s allegations, albeit in much greater detail and supported by their affidavits, in an attempt tú prove the elements for obtaining an injunction and obtain the relief of receiving their children’s transcripts.
3. The School’s Response to the Parents’ Motion
The school’s response to the parents’ motion alleged as follows, in pertinent part:
[The school’s] interest is not to cause harm to [the parents’] children. [The school’s] only interest is in enforcing its enrollment contracts and that interest is equally compelling and deserving of full protection under the law. Granting [the parents’] request would result in this Court declaring [the school’s] Contract invalid....
[[Image here]]
[The parents] argue that there is no enforceable contract because only [the father] signed the Contract. However, the Contract clearly stated that [the school] has the discretion to allow only one parent to sign_ This has occurred in prior years between [the parents] and [the school].
The school supported its response with an affidavit vei-ifying the school’s accep *1081 tance of the children’s enrollment in prior years when only one of the parents signed the contract. The school’s affidavit also verified the complaint’s allegations as -to the parents’ failure to cancel the contract before the occurrence of the cancellation dates stated in-the contract.
4. The Court’s Order Granting the Parents’ Motion
The circuit court held an evidentiary hearing on the parents’ motion. The parties’ evidence and arguments were consistent with their pleadings and supporting affidavits.
After the hearing, the court orally announced its ruling as follows, in pertinent part:
Having heard the evidence and testimony in this case and argument ... by counsel, the Court is going to grant the Motion for Temporary Injunctive Relief in favor of [the parents’ older child] for [her] transcripts. I’m going to defer on the [parents’ younger child]. The Court finds that there’s a substantial likelihood of success on the merits and they will suffer irreversible harm if the Court fails to grant this injunction. The Court finds there is no adequate remedy at law and public interest will be served with the imposition of the injunction.
The court later entered a written order which stated, in pertinent part:
As to [the parents’ older child], the Court finds a substantial likelihood of success on the merits of [the parents’] claim for injunction to release school transcripts, that there will be irreparable harm if a preliminary injunction is not granted, that there is no adequate remedy at law, and that entering a preliminary injunction would serve the public interest.
[[Image here]]
The findings and conclusions set forth within this Order are made on the basis of testimony taken by the Court, and arguments made by counsel, as more specifically set forth within the transcript of the hearing on this matter.
5. This Appeal and Our Conclusions
This appeal followed. We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(B) (“Appeals to the district courts of appeal of non-final orders [include] those that ... grant ... injunctions....”).
We employ a mixed standard of review. See Fla. High Sch. Athletic Ass’n v. Rosenberg ex rel. Rosenberg, 117 So.3d 825, 826 (Fla. 4th DCA 2013) (“The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court’s order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.”) (citation omitted).
The school raises several arguments, but we choose to mention the only two arguments which are necessary for this opinion: (1) the circuit court’s order was facially insufficient because the court did no more than state that the parents had satisfied each element to obtain a temporary injunction; and (2) based on the contract’s plain language, the parents failed to establish a substantial likelihood of success of being entitled to obtain their children’s transcripts without first paying their obligation to the school.
We agree with both of these arguments. We address each in turn.

a. The Circuit Court’s Order was Facially Insufficient

Florida Rule of Civil Procedure 1.610(c) states, in pertinent part: “Every injunc *1082 tion shall specify the reasons for entry....”
We have held that “[s]trict compliance with Florida Rule of Civil Procer dure 1.610(c) ... is required.” Eldon v, Perrin, 78 So.3d 737, 738 (Fla. 4th DCA 2012). We further have held that rule 1.610(c) is not strictly complied with when an order granting a temporary injunction does “little more than state that the mov-ant had satisfied each prong of the test. Such an order is facially insufficient.” Id. Thus, “[bjefore a temporary injunction may be granted, the trial court must make clear, definite, and unequivocally sufficient factual findings showing that: (1) the movant will suffer irreparable harm unless the status quo is maintained; (2) the movant has no adequate remedy at law; (3) the movant has a substantial likelihood of success on the merits; and (4) that a temporary injunction will serve the public interest.” Id. (emphasis added; citation and internal quotation marks omitted). “A trial court reversibly errs when an order fails to make specific findings for each of the elements.” McKeegan v. Ernst, 84 So.3d 1229, 1230 (Fla. 4th DCA 2012) (citation and internal brackets omitted).
Here, neither the circuit court’s oral ruling nor its written order contains “clear, definite, and unequivocally sufficient factual findings.” Eldon, 78 So.3d at 738 (citation omitted). Instead, the court’s oral ruling and written order, as in Eldon, did “little more than state that [the parents] had satisfied each prong of the test.” Id. Thus, the order here, as in Eldon, was facially insufficient, and we are compelled to reverse the order on that ground alone. Id.; see also McKeegan, 84 So.3d at 1230 (reversing order granting a temporary injunction where the order “does not make sufficient factual findings which support each of the elements”).
We make one distinction between this case and Eldon and McKeegan. In both Eldon and McKeegan, we remanded for the circuit court to make specific factual findings to show that the movant was entitled to relief. Eldon, 78 So.3d at 738; McKeegan, 84 So.3d at 1230.
Here, however, we see no need for remand, because upon our de novo review of the circuit court’s legal conclusions, we conclude that based on the contract’s plain language, the parents failed to establish a substantial likelihood of success of being entitled to obtain them children’s transcripts without first paying their obligation to the school. We address our conclusion in the next subsection.

b. The Parents Failed to Establish a Likelihood of Success on the Merits

“If the terms of a contract are clear and unambiguous, the court is bound by the plain meaning of those terms.” Landmark Am. Ins. Co. v. Pin-Pon Corp., 155 So.3d 432, 437 (Fla. 4th DCA 2015).
Here, the terms of the contract are clear and unambiguous. The contract provides that once the contract had been signed and the registration fee paid, the father became liable for the entire year’s tuition and fees as liquidated damages unless he canceled the contract in accordance with the contract’s strict cancellation procedures. The father failed to do so.
The contract further provided that: (1) the children’s voluntary absence from the school because of withdrawal would not affect the father’s financial responsibility; (2) in the event of withdrawal, the entire remaining balance due under the contract remains due and payable and shall, at the sole discretion of the school, become immediately due and payable; and (3) “School records and transcripts will not be re *1083 leased, for any of the students enrolled under this Contract until the account is paid in full for all students enrolled under this Contract.” (emphasis added). The father has not paid in full the account for his children under the contract, and so the school maintains the power not to release the children’s transcripts until the father pays in full.
The parents’ argument that the contract would not be binding until it was executed by the mother lacks merit. Again, the terms of the contract are clear and unambiguous. The contract provides that “Both parents must sign (•unless the School, in its discretion, permits enrollment with one parent’s signature).” (emphasis added). The school, by its action in pursuing the remaining balance, plainly has exercised its discretion to have permitted the children’s enrollment with just the father’s signature. The evidence showed the school has permitted the children’s enrollment with one parent’s signature in the past, so the school’s action here was not a new event. Contrary to the parents’ arguments, the contract does not require the school to have notified the parents of the school’s exercise of its discretion.
Our decision to enforce the contract as written is consistent with: (1) a related Florida statute; (2) the holding of one of our sister courts; and (3) the holding of a court from outside Florida. Our decision also is distinguishable from the holding of another court from outside Florida upon which the parents rely. We address each in turn,
(1) Section 100242(3), Florida Statutes
Section 1002.42(3), Florida Statutes (2015), governs a private school’s retention of records. The statute provides as follows, in pertinent part:
(b) All private schools that become defunct shall transfer all permanent information contained in student records to the district school superintendent of the public school 'district in which the private school was located_
[[Image here]]
(d) It is not the intent of the Legislature to limit or restrict the use or possession of any student records while a school is operational, but to facilitate access to academic records by former students seeking to continue their education or training after a private school has become defunct.
(emphasis added). Based on section 1002.42(3)’s plain language — that it is not the Legislature’s intent to limit or restrict a private school’s use or possession of any student records while the school is operational — the parents have no legislative remedy justifying their claim to obtain their children’s transcripts without first paying their obligation to the school.
(2) Our Sister Court’s Holding
In Perez v. Aerospace Academy, Inc., 546 So.2d 1139 (Fla. 3d DCA 1989), our sister court aligned itself with the majority rule that upon a student’s voluntary withdrawal from a private school, for a reason other than school’s wrongful conduct or the student’s serious illness or disability, the full amount of tuition remains due and payable, unless a school has been able to mitigate its damages by admitting a replacement student. Id. at 1140-41. According to our sister court:
The majority rule rests upon the premise that a private educational institution must make budgetary commitments for a year at a time, and that the acceptance of a place by one student may prevent the school’s enrolling another.
Id. at 1140. Here, the parents have not alleged that their withdrawal of their children from the school was for a reason involving the school’s wrongful conduct or *1084 their children’s serious illness or disability. The school, on the other hand, presented evidence that it had not been able to mitigate its damages by admitting replacement students for the children.
(3) Another State’s Consistent Holding
Fayman v. Trustees of Burlington College, 103 N.J.Super. 476, 247 A.2d 688 (1968), disagreed with on other grounds, Princeton Montessori Society, Inc. v. Leff, 248 N.J.Super. 474, 591 A.2d 685 (1991), involves facts remarkably similar to the instant case.
In Fayman, a child attended a private school for six years. Id. at 689, The child’s father submitted a signed re-enrollment contract to have his child readmitted the following fall. Id. At the same time, the father made á deposit which was required to reserve a place in the school. Id. The father made that deposit notwithstanding his child’s desire not to reenroll. Id. Even though the school had a policy allowing for withdrawals before July, the father waited until September to notify the school that he was withdrawing his child from the school and was requesting a release from the contract. Id. The school refused to cancel the contract because the school had saved a place for the child and it was too late to replace the child. Id. The school also refused to issue the child’s transcript until the father paid the child’s tuition. Id. The child’s parents sued to compel the school to issue the child’s transcript, Id. The school counterclaimed for payment of the first semester’s tuition, because the school mitigated its damages by obtaining a replacement for the second semester. Id.
The New Jersey court ruled for the school on both claims. Id. at 690, The court first found that the father breached the contract and was liable to pay the first semester’s tuition. Id. The court then found that the school was entitled to withhold issuance of the child’s transcript for past years where the father breached the contract for the upcoming year. Id. Rejecting the parents’ argument that the fulfillment of past contracts entitled them to a- transcript for those years, the court reasoned:
Firstly ... the party seeking equitable relief has breached the contract and thus by equitable standards comes into court with “unclean hands.” Secondly ... [t]he contract here under consideration contains no express provision regarding transcripts. Even assuming the school was under an implied obligation to make the transcript of grades available to the parents upon request, the court would find that performance of this obligation is conditional upon [t]he parents’ fulfillment of all past and present obligations under the contract. Therefore, once the new agreement ,.. became binding upon [the father], the school’s right to withhold the transcript in the event of a breach of contract became fixed.... [I]t was immaterial that the transcript concerned prior years for which payment had been received. [The father], by virtue of his execution of the new contract, was a party to an obligation which was continuing in ñatee. The court also notes that the withholding of the transcript is the only means short of litigation by which the school can enforce the obligations due.

Id.

The foregoing reasoning applies even stronger to the instant case, in which the parents make the same argument that the fulfillment of past contracts entitled them to a transcript for those years. The reen-rollment contract here, unlike the contract in Fayman, contained an express provision regarding transcripts:
*1085 School records and transcripts will not be released for any of the students enrolled under this Contract until the account is paid in full for all students enrolled under this Contract.
It would defy common sense to say that this express provision applied to only the upcoming school year which was the subject of the reenrollment contract. Because by withdrawing their children after the withdrawal deadline but before the school year began, no transcript existed for the upcoming school year for which the school could withhold release. Common sense dictates that the only transcript for which the school could withhold release was a transcript for past years.
(4) Another State’s Distinguishable Holding
The holding of another court from outside Florida, upon which the parents rely, is distinguishable.
In McKee v. Southfield School, 613 So.2d 659 (La.Ct.App.1993), a child attended a private school for several years up through his freshman year of high school. Id. at 659. In the summer before the child’s sophomore year, the school realized that the child’s tuition account was delinquent. Id. The school and the child’s father agreed to allow the child to continue in school provided his father made periodic payments. Id. at 660. The father made some, but not all, of the payments. Id. Nevertheless, the school permitted the child to complete his sophomore year. Id. When the child’s father requested a transcript from the school so the child could enroll elsewhere for his junior year, the school informed the father that it would not release the transcript until the father satisfied the debt. Id. The child, who was eighteen, sued the school, seeking both a preliminary and permanent injunction. Id. The trial court granted the preliminary injunction, finding that the school, by continuing to educate the child during his sophomore year, was estopped from withholding the transcript. Id. at 661.
The Louisiana appellate court affirmed. Id. at 663. The appellate court initially observed that the father’s contract with the school was silent regarding whether the school was obligated to provide a transcript or was relieved of that obligation if the father did not pay the child’s tuition. Id. at 661. The appellate court then found that, if the contract implied the school would provide a transcript, then the school was relieved of that obligation because the father did not pay the child’s tuition. Id.
However, the appellate court ultimately concluded that, even though the child could riot demand the transcript under the contract, he could do so on the basis of detrimental reliance. Id. at 662. The appellate court reasoned, in pertinent part:
When [the school] permitted [the child] to continue his education, notwithstanding his father’s clear failure to perform under the contract as written or as revised ... [the school] implicitly promised to [the child], himself, that he would receive credit toward his high school diploma if he successfully met academic requirements. Also implicit in [the school’s] continued performance was that it would supply documentation of [the child’s] academic accomplishments. [The child] was certainly reasonable in expecting this performance as the school never indicated that it might withhold his academic transcript. '
[The child’s] reliance on [the school’s] continued enrollment would undoubtedly have a detrimental effect upon him were [the school] now permitted to withhold documentation of his education....
Id. at 663 (emphasis added; internal citations omitted).
*1086 McKee is 'distinguishable in two respects. First, the school here did not permit the children to continue their education notwithstanding the father’s failure to pay their tuition. Second, the contract here clearly provided that “School records and transcripts will not be released for any of the students enrolled under this Contract until the account is paid in full for all students enrolled under this Contract.” Given that provision, it would have been unreasonable for the children to have expected the school to provide their transcripts after the father failed to pay their tuition.

Conclusion

We recognize, as the circuit court likely recognized, that in this dispute between the school and the parents over money, the children have become innocent victims. While we may be sympathetic to the children’s situation, we are not a court of public opinion — we are a court of law. And “[i]t is never the role of a ... court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain.” Barakat v. Broward Cty. Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000) (citation omitted).
Here, the parents made what turned out to be a bad bargain for their children. Based on the contract’s plain language, the parents failed to establish a substantial likelihood of success of being entitled to obtain their children’s transcripts without first paying their obligation to the school. We cannot rewrite the contract to benefit the children.
We have considered the parents’ other arguments in support of affirmance, and we conclude that those arguments, like the parents’ arguments discussed above, lack merit. We reverse the order granting the parents’ motion for temporary injunction.

Reversed.

DAMOORGIAN and LEVINE, JJ., concur.

. The father's use of 2013 instead of 2014 appears to be an inadvertent error.